818 So.2d 853 (2002)
Ellen KILLETT
v.
SANDERSON FARMS.
No. 2001 CA 0277.
Court of Appeal of Louisiana, First Circuit.
May 10, 2002.
*855 Williams R. Mustian, III, Metairie, Counsel for Plaintiff/Appellee Ellen Killett.
*856 Christopher M. Moody, Hammond, Counsel for Defendant/Appellant Sanderson Farms.
Before: FITZSIMMONS, DOWNING, and LANIER[1], JJ.
WALTER I. LANIER, JR., Judge Pro Tem.
In this workers' compensation action, the defendant, Sanderson Farms, appeals the judgment of the Office of Workers' Compensation (OWC) judge granting benefits to plaintiff, Ellen Killett. Sanderson Farms (Sanderson) asserts that Ms. Killett failed to prove by an overwhelming preponderance of the evidence that her carpal tunnel syndrome was job related as required by La. R.S. 23:1031.1(D). Ms. Killett has answered the appeal contending that the OWC judge erred in failing to award her penalties and attorney fees.

FACTS AND PROCEDURAL HISTORY
On September 30, 1999, Ellen Killett began working at Sanderson's chicken processing plant in Hammond, Louisiana. She was hired as an assembly line worker in the marination department where her duties included tucking the legs of whole chickens securely in place on their bodies and clamping them. This type of work necessarily involved repetitive arm and wrist movements. Ms. Killett testified that she had to process five or six chickens per minute in this manner as they passed on a conveyor belt. She further testified that she preformed this activity an average of five or six hours a day.
On various occasions, Ms. Killett complained to her supervisor about soreness in her hands and arms. Whenever this occurred, the supervisor would assign her to a less strenuous job, such as bagging chicken parts. On other occasions, Ms. Killett sought assistance from the company nurse. On November 5, 1999, approximately 36 days after she began her employment, Ms. Killett went to the nurse with complaints of soreness. In response, the nurse applied deep heat to her hands. She returned to the nurse on November 30, 1999, again complaining of soreness. The nurse's treatment consisted of taping two of Ms. Killett's fingers together. Again, on January 10, 2000, Ms. Killet returned to the nurse complaining of popping sounds in both wrists and being unable to hold her arms over her head. The following morning, she returned to the nurse with complaints of soreness. At this point, the nurse believed she might have carpal tunnel syndrome and promptly sent her to Dr. Daunis. Ms. Killett did not return to work after that date. Ms. Killett only worked at Sanderson Farms for a little more than three months.
Dr. Daunis diagnosed bilateral tendonitis, gave her wrist braces to wear and prescribed a course of occupational therapy. The records from this therapy indicate that Ms. Killet was vague and inconsistent in describing her symptoms, but that she tolerated her therapy well. The therapist stated that Ms. Killet exhibited no outward signs of pain in performing her exercises, though he did note that, upon finger flexion, she demonstrated a "clicking" in her forearm. He was unable to determine whether it was a tendon or a carpal bone. Over the course of her treatment, Ms. Killet reported that she was getting better, that her pain had decreased, and consequently, her need to wear the wrist splints also decreased. After six sessions, Ms. Killet was discharged from her occupational therapy with a recommendation *857 that she undergo "work conditioning" before returning to any full-time employment.
After completing her occupational therapy, Ms. Killett next sought treatment from Dr. Fambrough, an orthopedist. He classified her as totally incapacitated and, based on her symptoms, believed she might have bilateral carpal tunnel syndrome. As a result, he ordered Ms. Killett to undergo nerve conduction studies. An EMG study confirmed his diagnosis.
After her visit to Dr. Daunis on January 11, 2000, Ms. Killett made a claim for and received workers' compensation indemnity benefits at the rate of $151.25 per week beginning January 19, 2000. However, Ms. Kleamenakis, the senior case manager for appellant's workers' compensation carrier, subsequently ordered the payments terminated after she received the EMG study from Dr. Fambrough showing that Ms. Killett was suffering from carpal tunnel syndrome. Her justification for terminating the benefits was that Ms. Killett had been employed with Sanderson Farms for less than a year, and under La. R.S. 23:1031.1(D), the disease was presumed to be non-occupational. In response, Ms. Killett filed a disputed claim for compensation with the OWC on February 23, 2000.
On April 26, 2000, Ms. Kleamenakis received a report from Dr. Fambrough regarding Ms. Killett's carpal tunnel syndrome that provided, in part, as follows:
It is my understanding that her onset of symptoms developed after her employment. I do not know a specific time that could be put on a person developing carpal tunnel syndrome ....
It is my opinion that the person is on the borderline of developing symptoms for carpal tunnel, but are completely asymptomatic then a short course of only several weeks may be necessary for them to become symptomatic. In that case, I would feel that her job would have contributed to her developing of symptoms. However, in such case as that she may have very well developed the symptoms whether she was working at Sanderson Farms or not. I think the point that I would make is that her onset of symptoms did come on after her employment at Sanderson Farms. I do not think my opinion would be of much help in settling the dispute since I think she may have developed the symptoms whether she would have been working at Sanderson Farms or not. The fact remains she was working at Sanderson Farms and the activity she was doing probably did contribute to her onset of symptoms. (Emphasis added.)
Despite Dr. Fambrough's report, Ms. Kleamenakis did not change her position about the termination of benefits to Ms. Killett.
A trial on the matter was held on October 23, 2000. Testimony at the trial adduced that prior to her employment at Sanderson, Ms. Killett had worked for two years as a housekeeper at a hotel. Ms. Killett testified that prior to going to work at Sanderson, she never experienced any problems with her wrists, never received any treatment for her wrists and never experienced any numbness or tingling in her hands. Following her employment at Sanderson, Ms. Killett tried to work as a waitress, but quit after a short time because her arms caused her pain and the pay was inadequate. At the time of trial, Ms. Killett was working at a grocery store where her duties included bagging groceries and bringing in buggies. Ms. Killett stated she always wears her wrist brace while working and that her present duties only cause her pain on occasion. She also admitted she was able to work on a library computer for one to three hours at a time, but only did this while wearing her brace.
*858 Mr. Chip Blessey, the personnel manager at Sanderson, testified that carpal tunnel syndrome was a definite concern at Sanderson because they engage in assembly line work which necessarily involves a lot of repetitive jobs. As a result, Sanderson had taken several steps to eliminate or lessen the likelihood of employees developing carpal tunnel syndrome. First, they implemented a process known as "work hardening," whereby new employees begin by working only four hours a day and then gradually, over a period of three weeks, moved up to full time. Second, they utilize a program of job rotation so employees are not always performing the same job. Third, whenever an employee complains of pain, he or she is temporarily moved to a less strenuous job. Sanderson also provides wrist bands for employees, has a nurse on-site to provide deep heat or other treatments and hired an ergonomics firm to make helpful suggestions. Mr. Blessey stated that the soreness employees experience usually dissipates in approximately three to four weeks. Yet, despite all the measures Sanderson takes, Mr. Blessey conceded that there are still employees who develop carpal tunnel syndrome. Although he was uncertain, he surmised that probably more than 10 Sanderson employees a year develop the condition.
On October 31, 2000, the OWC judge rendered judgment in favor of Ms. Killett, finding as a fact that her carpal tunnel syndrome was caused by her employment at Sanderson. The judge awarded temporary total disability benefits from January 11, 2000 through June 2000, less payments already made and further ordered Sanderson to pay for the surgery recommended by Dr. Fambrough. Finally, the judge found as a fact that Sanderson did not handle the claim in a capricious or arbitrary manner and denied Ms. Killett's request for penalties and attorney fees.
Sanderson suspensively appeals asserting that the OWC judge erred in finding that Ms. Killett had proven by an overwhelming preponderance of the evidence that her carpal tunnel syndrome was due to her employment at Sanderson. Ms. Killett answered the appeal arguing that she should have been awarded penalties and attorney fees.

STANDARD OF REVIEW
Factual findings in a worker's compensation case are subject to the manifest error-clearly wrong standard of review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Banks, 96-2840 at 7-8, 696 So.2d at 556; Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993). Where there are two permissible views of evidence, a factfinder's choice between them can never be manifestly erroneous. Banks, 96-2840 at 8, 696 So.2d at 556; Stobart, 617 So.2d at 882. "Thus, `if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of the fact, it would have weighed the evidence differently." Banks, 96-2840 at 8, 696 So.2d at 556 (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 [La.1990]).

DISABILITY OF KILLETT
Ms. Killett had only worked for Sanderson for a little over three months when she allegedly developed her carpal tunnel syndrome.
*859 The applicable law, La. R.S. 23:1031.1, provides, in pertinent part:
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome ....
. . .
D. Any occupational disease as herein listed contracted by an employee while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed to be non-occupational and not to have been contracted in the course of and arising out of such employment, provided, however, that any such occupational disease so contracted within the twelve months' limitation as set out herein shall become compensable when the occupational disease shall have been proved to have been contracted during the course of the prior twelve months' employment by an overwhelming preponderance of the evidence.[2] (Emphasis added.)
Because Ms. Killett worked for Sanderson for less than a year, there is a rebuttable statutory presumption that her employment did not cause her carpal tunnel syndrome. However, Ms. Killett can overcome the presumption and receive compensation, if she proves by an overwhelming preponderance of evidence that the disease was contracted during her employment. Thornell v. Payne and Keller, Inc., 442 So.2d 536, 541 (La.App. 1 Cir.1983), writ denied, 445 So.2d 1231 (La.1984).

Standard of Proof
The legislature has used the phrase "overwhelming preponderance of evidence" as the statutory burden of proof in this case; it did not define it. Dibler v. Highland Clinic, 27,274, p. 7 (La.App. 2 Cir. 9/27/95), 661 So.2d 588, 592. When interpreting a law, the court should give it the meaning the lawmaker intended. Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1 Cir.1984). It is presumed that every word in the law was intended to serve some useful purpose and that no unnecessary words were used. Id. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless, or superfluous language in the law. Id. Therefore, the legislature obviously did not intend for the standard of proof in these cases to simply be a "preponderance of evidence."
However, the lawmaker is also presumed to have enacted each law with deliberation and full knowledge of all existing laws on the same subject Id. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter. Id. Since the legislature employs the "clear and convincing" standard of proof elsewhere in the workers' compensation law, yet did not do so here, we can only conclude that the legislature did not intend the standard to be "clear and convincing evidence" either.
The Louisiana Supreme Court has not squarely addressed the issue of what constitutes an "overwhelming preponderance of evidence", although it has recognized in *860 dicta that it is a "heightened" or "higher" standard of proof. See O'Regan v. Preferred Enterprises, Inc., 98-1602, pp. 2 & 7 (La.3/17/00), 758 So.2d 124, 127 & 130. Our colleagues in the second circuit defined this nebulous standard of proof in Dibler v. Highland Clinic, 27,274, pp. 7-8, 661 So.2d at 592, as follows, in pertinent part:
In its ordinary sense, according to our search into several dictionaries, the word overwhelm simply means to greatly overcome, to overcome by superior weight, force or numbers. We shall consider the phrase overwhelming preponderance, not as an oxymoron, but something greater than a mere preponderance and something that perhaps is closer to clear and convincing evidence, another phrase in the w.c. law, § 1221(1)(c) ...
To meet the standard of clear and convincing evidence in § 1221(1)(c), a trier of fact's belief in a claimant's self-serving testimony alone is insufficient. Expert testimony of an objective quality that focuses on probabilities is additionally required to meet that standard ....
In accord with the ordinary sense of the word overwhelm, we conclude evidence which overwhelmingly preponderates is that evidence, if found credible and objectively supported by the trier of fact, which either is much more probable than, is greatly superior to, or greatly overcomes the evidence to the contrary. (Citations omitted and bolding added.)
While workers' compensation laws are to be construed liberally in favor of the claimant, that interpretation cannot lessen the plaintiff's burden of proof. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277, 279-80 (La.1993). The standard here requires Ms. Killett to produce evidence of a causal relationship between her disease and her employment that the trier of fact can reasonably find credible and objectively supported, and which is either much more probable than, is greatly superior to, or greatly overcomes any evidence to the contrary. The OWC judge found that this burden of proof was satisfied in the present case. This factual finding must be given great weight and should not be overturned absent manifest error. Bailey, 620 So.2d at 280. Our review of the record leads us to conclude that the OWC judge was not manifestly erroneous in finding that Ms. Killet satisfied the proper proof requirements.
Appellants argue that Ms. Killett's self-serving testimony that she never suffered problems with her hands and wrists prior to her employment with Sanderson was insufficient to satisfy the required standard of proof. Ms. Killett's testimony is supported by Dr. Fambrough's report that states his belief that her job and the activities it entailed probably contributed to her onset of symptoms. The report also shows that Ms. Killett's testimony is consistent with the medical history that she gave Dr. Fambrough who noted in his report that the onset of her symptoms did not occur until she after began her employment at Sanderson. Mr. Blessey, the personnel manager from Sanderson, admitted that carpal tunnel syndrome was a major concern at Sanderson because the repetitive assembly line work that Ms. Killet engaged in necessarily lends itself to the possible development of carpal tunnel syndrome. The statements of Mr. Blessey and Dr. Fambrough are expert testimony of an objective quality from which it can reasonably be inferred that Ms. Killett's duties at Sanderson probably caused her carpal tunnel syndrome. In addition, the nurses' log from Sanderson's employment files shows that Ms. Killett's symptoms progressively became worse during her *861 employment. The records of her occupational therapy show that Ms. Killett's condition improved after leaving her job at Sanderson. Ms. Killett's testimony was not contradicted and her credibility was not impugned. Obviously, the OWC judge believed her.
Sanderson further argues that Dr. Fambrough's report did not state with any degree of medical certainty that Ms. Killett's employment caused her carpal tunnel syndrome but, rather at best, only opined that her employment contributed to her carpal tunnel syndrome. Appellants cite Dvorak v. Melvin Jones Framing Contractors, 96-701 (La.App. 5 Cir. 1/15/97), 688 So.2d 94 and Howard v. Baker Heritage Hosiery, 96-335 (La.App. 5 Cir. 10/1/96), 683 So.2d 827 to support their contention that in order to overcome the statutory presumption, the doctor must state with medical certainty that the job caused the occupational disease. Those cases are distinguishable from the instant case. In both of the cited cases, the claimants' conditions worsened after leaving their employment. This fact, combined with the lack of medical certainty shown by the doctors, mitigated against a finding that it was the job that caused the condition. Such is not the case here. Additionally, other cases addressing this particular statutory presumption have not imposed a requirement for unequivocal medical certainty in order to rebut the presumption. See and compare Oliveaux v. Riverside Nursing Home, 29,419 (La.App. 2 Cir. 4/2/97), 691 So.2d 340; Dupre v. Industrial Garment & Supply of La., 94-1456 (La.App. 3 Cir. 5/3/95), 657 So.2d 194.
As for appellant's argument that Ms. Killett's duties at Sanderson only contributed to her carpal tunnel syndrome, rather than caused it, we point out that it is well settled in the law that an employer takes his employee as he finds him. The fact that Ms. Killet may have been a person more susceptible to contracting carpal tunnel syndrome due to repetitive assembly line work than another person is of no consequence. Furthermore, despite the statutory presumption, an employee's disability is compensable if a pre-existing condition or disease is activated or precipitated into a disabling condition as a result of work. White v. Dental Arts, 94-1576, p. 4 (La.App. 3 Cir. 5/3/95), 657 So.2d 218, 220, writ denied, 95-1369 (La.9/15/95), 660 So.2d 449; Henry v. Allied Industrial Services, Inc., 447 So.2d 1204, 1205 (La. App. 5 Cir.), writ not considered, 449 So.2d 1353 (La.1984).

PENALTIES AND ATTORNEY FEES
Ms. Killet has answered the appeal asserting that the OWC judge erred in failing to award penalties and attorney fees. Two statutory provisions, La. R.S. 23:1201(F) and La. R.S. 23:1201.2, provide for the award of penalties and attorney fees in workers' compensation cases. The applicable statutory authority for assessing penalties and attorney fees depends on whether the insurer failed to commence or pay benefits in a timely fashion or whether benefits that had been timely paid were discontinued. Page v. Page, 98-1625, p. 9 (La.App. 1 Cir. 9/24/99), 762 So.2d 18, 23. In Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, the Louisiana Supreme Court stated that La. R.S. 23:1201.2 applies only when an insurer or employer arbitrarily discontinues payment of benefits; La. R.S. 23:1201(F) applies only when there has been a failure to commence or pay benefits timely. Williams, 98-2271, 737 So.2d at 45. The distinction drawn in the Williams case is significant because both penalties and attorney fees are recoverable under La. R.S. 23:1201(F), whereas only attorney fees are recoverable under La. R.S. 23:1201.2. Id.
*862 In the instant case, Ms. Killett does not argue that payments were not commenced or paid in a timely fashion. She received disability benefits until it was determined that she had carpal tunnel syndrome. The subsequent termination of her benefits is a discontinuance, and the applicable statute is La. R.S. 23:1201.2 which provides, in part:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims.
Because the statute has no provision for penalties, that portion of the judgment denying the award of penalties is correct.
The only inquiry herein is whether the employer acted arbitrarily, capriciously or without probable cause in discontinuing the payment of compensation and medical benefits to trigger the imposition of attorney fees under La. R.S. 23:1201.2. Williams, 98-2271 at 8-9, 737 So.2d at 45. "Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." Id., 98-2271, 737 So.2d at 45-46. The determination by a workers' compensation judge of arbitrary and capricious behavior is one of fact, and should not be disturbed on appeal absent manifest error. Bergeron v. Watkins, 98-0717, p. 4 (La.App. 1 Cir. 3/2/99), 731 So.2d 399, 402.
Upon learning that Ms. Killett was suffering from carpal tunnel syndrome, Ms. Kleamenakis stated she immediately terminated Ms. Killett's benefits pursuant to La. R.S. 23:1031.1. Louisiana R.S. 23:1031.1 references carpal tunnel syndrome as an occupational disease. It further states that any occupational disease contracted by an employee who has been employed for less than twelve months shall be presumed to be non-occupational. Id. Ms. Kleamenakis stated that she discontinued Ms. Killett's benefits on the basis of this presumption. However, the presumption provided in 23:1031.1 is not a conclusive presumption, but a rebuttable statutory presumption and therefore can be overcome by appropriate evidence. La. Code of Evid. art. 304. Louisiana R.S. 23:1031.1 goes on to state that the disease shall become compensable if the claimant proves by an overwhelming preponderance of evidence that it was contracted during the course of the prior employment.
At the time Ms. Kleamenakis terminated Ms. Killett's benefits, all that was known was that she had carpal tunnel syndrome and that it was statutorily presumed to be non-occupational. A determination of whether a discontinuation of compensation benefits is arbitrary, capricious or without probable cause usually depends on the facts existing and known at the time benefits are terminated. Parfait v. Gulf Island Fabrication, Inc., 97-2104, p. 16 (La.App. 1 Cir. 1/6/99), 733 So.2d 11, 24. However, that is not always determinative. Termination of benefits may be considered arbitrary, capricious or without probable cause when it appears that further information was required to make an exact determination of the employee's condition. If an insurer or employer first receives a favorable medical report, but later receives information indicating the possibility of a continuing disability, it may not blindly rely on the earlier report to avoid attorney fees. Gordon v. Sandersons Farms, 96-1587, p. 11 (La.App. 1 Cir. 5/9/97), 693 So.2d 1279, 1287; Alford v. Environmental Monitoring, 93-0985, p. 6 (La.App. 1 Cir. 10/7/94), 646 So.2d 961, 966; Allen v. Misco *863 Paper, 27,146, p. 9 (La.App. 2 Cir. 8/23/95), 660 So.2d 175, 181.
Here, Sanderson initially had the benefit of the presumption that the disease was non-occupational thereby relieving it of liability. However, it subsequently received Dr. Fambrough's medical report establishing a causal relationship between Ms. Killett's carpal tunnel syndrome and her duties at Sanderson. In response, Sanderson did not reinstate Ms. Killett's benefits. Sanderson did not require Ms. Killett to undergo an independent medical examination and did not seek evidence, either medical or lay, to contradict Ms. Killett's statements or Dr. Fambrough's report.
An insurer or an employer has a duty to investigate and make every reasonable effort to assemble factual and medical information to ascertain whether a claim is compensable before denying benefits. Parfait, 97-2104 at 17, 733 So.2d at 25. This obligation is continuing in nature. Id. Statutes authorizing attorney fees in workers' compensation cases are imposed to discourage indifference and undesirable conduct by employers and insurers. Williams, 98-2271 at pp. 8-9, 737 So.2d at 46. Such statutes are penal in nature and must be strictly construed.
Sanderson's initial discontinuance of benefits was not arbitrary, capricious or without probable cause because of the statutory presumption. However, after Sanderson received Dr. Fambrough's medical report establishing a causal connection between Ms. Killett's carpal tunnel syndrome and her job, Sanderson was put on notice about the nexus between the work and the medical condition. Sanderson's subsequent lack of action in failing to counter Dr. Fambrough's report and its continued reliance on the rebuttable presumption in the face of contradictory evidence renders its refusal to reinstate Ms. Killett's benefits arbitrary, capricious or without probable cause. The OWC judge was manifestly erroneous in finding to the contrary and his ruling is reversed.
We next determine the amount of the attorney fee to be awarded. The factors to be considered by a court when fixing such a fee include the degree of skill and work involved in the case, the amount of the claim, the amount recovered and the amount of time dedicated to the case. Insurance Company of North America v. Labit, 99-2448, 99-2449 p. 7, (La.App. 1 Cir. 11/15/00), 772 So.2d 385, 389. After considering all of these factors, we fix the attorney fee at $2,500.00.

DECREE
For the foregoing reasons, the judgment of the OWC judge denying the award of an attorney fee is reversed, and judgment is rendered in favor of Ms. Killett and against Sanderson for an attorney fee of $2,500.00, with legal interest thereon from the date of this judgment until paid. In all other respects, the judgment of the OWC court is affirmed. Sanderson is cast with the costs of this appeal.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
FITZSIMMONS, J., concurs in the result only.
DOWNING, J., concurs.
"Overwhelming preponderance" is an oxymoron.
NOTES
[1] The Hon. Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeals, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] We follow the statutory language in effect at the time of the commencement of disability in this matter. La. R.S. 23:1031.1 has since been amended by Acts 2001, No. 1189, § 1, effective June 29, 2001, in pertinent part, at the end of subsection D., whereby the legislature has substituted "a preponderance" for "an overwhelming preponderance."