950 So.2d 789 (2006)
Shavon NICHOLS
v.
SANDERSON FARMS.
No. 2005 CA 2356.
Court of Appeal of Louisiana, First Circuit.
November 3, 2006.
*790 Thomas J. Hogan, Jr., Hammond, Counsel for Claimant/Appellant Shavon Nichols.
John T. Roethele, Denham Springs, Counsel for Defendant/Appellee Sanderson Farms.
Before: PETTIGREW, DOWNING, and HUGHES, JJ.
HUGHES, J.
This is an appeal from an action seeking workers' compensation benefits, which were denied. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On February 14, 2003, claimant, Shavon Nichols, filed a "Disputed Claim for Compensation" with the Office of Workers' Compensation (OWC). On that form, Ms. Nichols stated that her "Date of Hire" was "7-29-02," and that her "Date of Injury/Illness" was "10-14-02."[1] Ms. Nichols asserted that while working as a "wing *791 cutter" for the defendant, Sanderson Farms, at the end of September 2002, she began to notice numbness in the fingers of her right hand, as well as sharp pain in her wrist. Ms. Nichols further asserted that she also had sharp pain in the palm and wrist of her left hand.
Defendant asserts that Ms. Nichols first complained of her symptoms to the company nurse on October 14, 2002, and was immediately placed on light duty, though she continued to collect her regular wages. The defendant employer continued to employ the claimant through February 2003, at full salary, and paid medical benefits until a determination was made that the claimant's condition was unrelated to her work.
Following a hearing on August 13, 2003, the OWC judge ruled in favor of defendant and dismissed Ms. Nichols' claim. Ms. Nichols has appealed the ruling to this court, asserting that the OWC was manifestly erroneous in its ruling.

LAW AND ANALYSIS
The Workers' Compensation Act provides coverage to an employee for personal injury by accident arising out of and in the course of his employment. An employee must prove the chain of causation required by the workers' compensation statutory scheme as adopted by the legislature, and must establish that the accident was employment-related, the accident caused the injury, and that the injury caused the disability. Clausen v. D.A.G.G. Construction, XXXX-XXXX, p. 2 (La.App. 1 Cir. 2/15/02), 807 So.2d 1199, 1201, writ denied, XXXX-XXXX (La.5/24/02), 816 So.2d 851. A claimant has the burden of proving disability by clear and convincing evidence. See Walker v. High Tech Refractory Services, Inc., XXXX-XXXX, p. 3 (La.App. 1 Cir. 6/25/04), 885 So.2d 1185, 1188.
As in other cases, in reviewing the OWC judge's factual determinations, including whether the employee has discharged his burden of proof, this court is bound by the manifest error standard of review. Lafleur v. Alec Electric, XXXX-XXXX, p. 4 (La.App. 1 Cir. 12/30/04), 898 So.2d 474, 478, writs denied, XXXX-XXXX, XXXX-XXXX (La.4/8/05), 898 So.2d 1287, 1288; Moran v. G & G Construction, 2003-2447, p. 4 (La.App. 1 Cir.10/29/04), 897 So.2d 75, 79, writ denied, 2004-2901 (La.2/25/05), 894 So.2d 1148. Under that standard of review, an appellate court may only reverse an OWC judge's factual determinations if it finds from the record that a reasonable factual basis for the finding does not exist, or that examination of the entire record reveals that the finding is clearly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id., 617 So.2d at 883. Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the factfinder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review where conflict exists in the testimony. Lafleur v. Alec Electric, XXXX-XXXX at p. 4, 898 So.2d at 478.
Prior to the legislative extension of workers' compensation coverage to include occupational diseases, a worker's entitlement to compensation hinged on the occurrence of an "accident," which can only be established by the claimant's proof of an "identifiable precipitous event" that caused injury. While enlarging workers' compensation coverage to cases of occupational disease, LSA-R.S. 23:1031.1 retains the requirement that an employee establish *792 the disease arises from his work, i.e., from "causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease." Thus, the claimant must show that he contracted the disease at issue during the course of his employment and that the disease was the result of the nature of the work performed. The causal link between a claimant's illness and his work-related duties must be established by a reasonable probability; the claimant fails in his burden of proof upon a showing of only a possibility that the employment caused the disease or that other causes not related to the employment are just as likely to have caused the disease. Dunaway v. Lakeview Regional Medical Center, 2002-2313, p. 5 (La.App. 1 Cir. 8/6/03), 859 So.2d 131, 134-35 (citations omitted).
In the case sub judice, the OWC judge found that Ms. Nichols had failed to establish her right to workers' compensation benefits because she failed to rebut the statutory presumption applicable to her claim as contained in LSA-R.S. 23:1031.1(D), which provides, in pertinent part:
§ 1031.1. Occupational disease
A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.
* * *
D. Any occupational disease contracted by an employee while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed not to have been contracted in the course of and arising out of such employment, provided, however, that any such occupational disease so contracted within the twelve months' limitation as set out herein shall become compensable when the occupational disease shall have been proved to have been contracted during the course of the prior twelve months' employment by a preponderance of evidence. [Emphasis added.]
Carpal tunnel syndrome is considered an occupational disease; however, where the claimant has been employed for less than a year, there is a rebuttable statutory presumption under LSA-R.S. 23:1031.1(D) that the employment did not cause the carpal tunnel syndrome. This presumption can be overcome and the claimant receive compensation, if the claimant proves by preponderance of evidence that the disease was contracted during her employment. See Killett v. Sanderson Farms, XXXX-XXXX, p. 6 (La.App. 1 Cir. 5/10/02), 818 So.2d 853, 859, citing Thornell v. Payne and Keller, Inc., 442 So.2d 536, 541 (La. App. 1 Cir.1983), writ denied, 445 So.2d 1231 (La.1984).
*793 In ruling against the claimant in this case, the OWC judge gave the following reasons for judgment:
Shavon Nichols worked at Sanderson Farms ("Sanderson") as a wing cutter from 1996 to 2000. Ms. Nichols returned to work at Sanderson as a wing cutter in July 2002. In October 2002, Ms. Nichols began experiencing problems with both wrists and hands. She was taken off wing cutting and placed on light duty. She continued working at Sanderson until February 2003.
Ms. Nichols initially saw Dr. Mark Daunis for her complaints. Dr. Daunis diagnosed her with [tendonitis] and prescribed physical therapy and EMG/ nerve conduction studies. Dr. Pervez Mussarat performed a nerve conduction study, which showed bilateral carpal tunnel syndrome.
Ms. Nichols saw Dr. Paul Vandeventer on October 30, 2002 at Sanderson's request. He diagnosed her with [tendonitis] and mild carpal tunnel syndrome, but recommended against surgery.
Ms. Nichols then saw Dr. Eric George, her choice of orthopedist/hand specialist, on November 7, 2002. Dr. George diagnosed her with moderate carpal tunnel syndrome and recommended modified duty. On December 2, 2002, Dr. George noted symptom overlay[[2]] in Ms. Nichols' complaints, but nonetheless recommended surgical intervention in the form of nerve decompression in both wrists.
Liberty Mutual, third party administrator of Sanderson, denied Ms. Nichols' claim, relying on the statutory presumption contained in [LSA-R.S.] 23:1031.1(D), since Ms. Nichols had been employed at Sanderson for less than twelve months prior to her first complaints of hand and writs problems. Thus, the only issue for the court to decide is whether Ms. Nichols has rebutted the statutory presumption by a preponderance of the evidence.
Ms. Nichols testified at trial that after her hand and wrist problems began in October 2002, she never went back to wing cutting. She testified that she was put on light duty at various positions including bone-checking, working in the laundry room, and cleaning restrooms and windows. She testified that she currently works at Options, where she takes care of mentally disabled patients. Her duties include taking patients to the store and reminding patients to take their medications.
Ms. Nichols testified in deposition that at Options, she does not perform any physical tasks for the patients and mostly observes the patients. She also testified in deposition that since leaving Sanderson, her condition has not improved and she still has pain. She testified in deposition that since her last visit to Dr. George in December 2002, she had to go to North Oaks [E]mergency Room because of sharp pains and tingling in both hands.
Dr. George testified in deposition that he could not relate Ms. Nichols' carpal tunnel syndrome to her employment at Sanderson because Ms. Nichols continued to complain of pain even after being taken off the wing cutter job.
The facts of this case are distinguishable from Killett v. Sanderson Farms, XXXX-XXXX (La.App. 1 Cir. 5/10/02), 818 So.2d 853. In Killett, the claimant's *794 condition improved after being taken off work on the assembly line. Additionally, the physician in Killett stated that the claimant's work activity at Sanderson "probably did contribute to her onset of symptoms."
In the instant case, Ms. Nichols testified that her problems persist even after leaving Sanderson's employ and finding a job that does not require repetitive use of the hands. It is for this reason that Dr. George could not relate Ms. Nichols' condition to her employment at Sanderson.[[3]]
Looking at the evidence as a whole, the court finds that Ms. Nichols has failed to rebut the statutory presumption contained in [LSA-R.S.] 23:1031.1(D), and therefore her claim is dismissed with prejudice.
Ms. Nichols asserts in brief to this court that several circumstances established that her condition was work-related: (1) Sanderson Farms treated her as if her condition were work-related for the first ninety days after she reported symptoms; and (2) the doctors indicated her carpal tunnel syndrome was brought on by repetitive activities or use of her hands. Further, Ms. Nichols contends that the presumption imposed under LSA-R.S. 23:1031.1(D) should not apply to her case because she worked for Sanderson Farms a total of more than one year, considering her four years of employment before the 2000 involuntary termination. We find these arguments unconvincing.
Firstly, an employer has an obligation to investigate claims for workers' compensation rather than denying them offhand, and payment of medical benefits during an investigatory period, out of caution, does not constitute an admission of liability.[4] Secondly, while doctors who examined the claimant related her carpal tunnel syndrome to repetitive activities, none stated that the claimant's duties at Sanderson Farms were the repetitive activities causing injury. In fact, Ms. Nichol's treating physician, Dr. George, clearly stated that he did not think Ms. Nichol's job at Sanderson Farms caused her condition.
Finally, although we are unconvinced by claimant/appellant's assertion that the presumption created by LSA-R.S. 23:1031.1(D) should not be applied against her, particularly when the claimant was employed elsewhere during the nearly two-year time interval between her first and second periods of employment, we find it unnecessary to resolve the issue. After a thorough review of the record and jurisprudence, we are unable to say that Ms. Nichols met her burden of proving a causal link between her carpal tunnel syndrome and her work-related duties at Sanderson Farms.
Therefore, we must affirm the judgment of the OWC, albeit for other reasons, which found that Ms. Nichol's carpal tunnel syndrome did not arise from her employment.

*795 CONCLUSION
For the reasons assigned, we affirm the judgment of the OWC, and assess all costs to appellant, Shavon Nichols.
AFFIRMED.
NOTES
[1] The claimant had previously worked for the defendant from September 25, 1996 through October 9, 2000, when her employment was terminated. Thereafter, Ms. Nichols successfully obtained redress for wrongful termination of employment under the Family Medical Leave Act, and was rehired by Sanderson Farms. Ms. Nichols was reinstated as an employee of the defendant in July 2002.
[2] In his deposition, which was introduced into evidence in this case, Dr. George stated, "I felt that there was some symptom overlay in her complaints, which means I felt that she was overexaggerating [sic] her symptoms."
[3] Dr. George stated, "I do not believe that her carpal tunnel condition is related to her employment as a wing cutter." Dr. George explained that there is generally a decrease in symptomatology when a patient is taken off the job if the carpal tunnel syndrome was causally-related to that job. Since Ms. Nichols was immediately removed from her job when she first complained of wrist and hand symptoms, but continued to complain of symptoms months later, Dr. George did not think those symptoms were caused by the job. No other medical testimony was presented to the OWC.
[4] An employer has a duty to investigate an injured employee's condition. Roussell v. St. Tammany Parish School Board, 2004-2622 (La.App. 1 Cir. 8/23/06), 943 So.2d 449.