36 So.3d 339 (2010)
Sylvia CONNOR
v.
FAMILY DOLLAR STORE.
No. 2009 CA 1537.
Court of Appeal of Louisiana, First Circuit.
March 26, 2010.
*342 William Ken Hawkins, Ponchatoula, LA, for Claimant/Appellee, Sylvia Connor.
Jennifer Cortes Poirier, Jack E. Truitt, Covington, LA, for Defendant/Appellant, Family Dollar Store.
Before WHIPPLE, HUGHES, and WELCH, JJ.
WHIPPLE, J.
This matter is before us on appeal by defendant, Family Dollar Store ("Family Dollar"), from a judgment of the Office of Workers' Compensation ("OWC") in favor of claimant, Sylvia Connor, awarding her SEBs, past medical benefits, penalties and attorney's fees. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
The record discloses that on February 21, 2006, Connor was injured while in the course and scope of her employment with Family Dollar, where she was employed as the store manager and was earning an average weekly wage of $649.50. Specifically, while assisting a customer, Connor ascended a ladder to retrieve a mirror for a customer and injured her back while *343 descending the ladder with the mirror in hand. At the time of the accident, Connor had been working for Family Dollar for approximately eight months.
Prior to her employment with Family Dollar, Connor had sustained an injury in 2003, while employed at John's Curb Market (a/k/a Bohning & Company, Inc.). At that time, Connor had been referred by her employer to Dr. Michael Dunn, a family practitioner, for treatment of her 2003 injury, who subsequently diagnosed her condition as a thoracic and lumbar strain. Dr. Dunn also referred Connor to Dr. Paul Van Deventer, an orthopedic surgeon, in 2003, due to continued complaints associated with Connor's reflex sympathetic dystrophy and thoracic outlet syndrome. In a report dated December 18, 2003, Dr. Van Deventer had restricted Connor to sedentary/light duty employment. However, in January of 2004, Dr. Dunn released her to return to full-duty work at John's Curb Market. Thereafter, Conner was consistently employed and worked until her 2006 injury.
In connection with the February 2006 accident and injuries, Family Dollar also referred Connor to Dr. Dunn for treatment. Dr. Dunn diagnosed her condition as a thoracic strain and placed her on modified duty. On June 20, 2006, Dr. Dunn released Connor, but with permanent restrictions of sedentary work and specific instructions that she sit at least thirty minutes of every hour. On July 10, 2006, Dr. Dunn continued Connor's sedentary restrictions and recommended a consultation for pain management and rehabilitation. Instead, on July 25, 2006, Family Dollar referred Connor to Dr. Robert Steiner, an orthopedic surgeon, for a second opinion.
After evaluation, Dr. Steiner opined that Connor had sustained a thoracic strain/sprain and recommended a bone scan of the chest and thoracic spine for further evaluation of her symptoms. After a bone scan was performed on August 18, 2006, Dr. Steiner issued a report, dated September 1, 2006, wherein he advised that he saw no objective evidence of injury to her thoracic spine and felt that Connor had achieved maximum medical improvement ("MMI"). Dr. Steiner agreed that Connor should be placed on light/sedentary work restrictions based on Dr. Paul Van Deventer's 2003 orthopedic report and Connor's previous history of thoracic outlet surgery, brachial plexus surgery, and surgery for reflex sympathetic dystrophy, but opined that these work restrictions were necessary as a result of her previous medical history, and not the February 21, 2006 accident.
Even before receiving Dr. Steiner's report, on June "31," 2006, Family Dollar generated a separation notice, which it placed in Connor's personnel file, terminating her employment and stating as the purported reason that she "failed to return from a leave of absence."[1] Additionally, on October 16, 2006, Family Dollar terminated Connor's benefits, contending that she had reached MMI and had been released from treatment for her injury. However, Connor's pain had worsened at that point and had not improved. Because no further medical treatment was authorized by Family Dollar, Connor was forced to seek relief through emergency room visits.
*344 On October 30, 2007, Connor began treatment with a physician of her choice, Dr. Courtney Russo, an orthopedist at Audubon Orthopedics and Sports Medicine. Dr. Russo ordered a bone scan and an MRI of her lumbar, thoracic, and cervical spine. Thereafter, Dr. Russo opined that Connor had sustained a thoracic and lumbar strain as a result of the 2006 accident at Family Dollar. Based on these findings, Dr. Russo restricted her to sedentary work, recommended epidural injections and referred her to Dr. Patrick Waring for pain management. However, authorization for the recommended epidural injections and pain management referral was denied by Family Dollar's workers' compensation carrier, Risk Enterprise Management.
Connor filed disputed claims for compensation against her former employers for both the 2003 and 2006 accidents, which claims were consolidated before the OWC. Bohning & Company, Inc. filed a cross claim against co-defendant, Family Dollar, denying any liability and contending that Connor's injuries were sustained as a result of the 2006 accident at Family Dollar. On October 23, 2007, Bohning & Company, Inc. also filed a motion for summary judgment, contending that it was entitled to judgment in its favor because: (1) the thoracic/lumbar strain sustained by Connor in 2003 had completely resolved by April of 2004; (2) Connor had been asymptomatic upon her return to work; and (3) Connor had remained asymptomatic until her 2006 accident. The motion for summary judgment was initially denied by the OWC, but on January 15, 2008, Bohning & Company, Inc. re-urged its motion for summary judgment, based on the deposition of Dr. Steiner taken on November 10, 2008, during discovery. In the deposition, Dr. Steiner modified his previous opinion and concluded that Connor's current problems were unrelated to the 2003 accident. Specifically, Dr. Steiner testified that when he had compiled his previous report, he was not aware that: (1) Connor had continued to work in a full-duty capacity following the 2003 injury; (2) Connor thereafter had only missed one week of work and had returned to full duty after the 2003 injury; (3) her back problems had resolved in that Connor had experienced no further back pain and no leg pain since January of 2004; and (4) Connor had continued to do heavy labor from April of 2004 until the accident of February 21, 2006. Based on this information, Dr. Steiner concluded that the sprain/strain Connor sustained in 2003 had resolved. Dr. Steiner candidly acknowledged that when preparing his previous report, he did not have any information concerning Connor's symptomatology and work history between 2004 and 2006, and, thus, did not realize that she had been basically asymptomatic and working for two years before the 2006 accident. Thus, he concluded that "the diagnosis is thoracic strain as a result of the 2006 incident."
Given this testimony, on January 28, 2009, the OWC granted the motion for summary judgment and dismissed Connor's claim against Bohning & Company, Inc.[2] However, despite the revised testimony of its own doctor, and the ruling of the OWC, Family Dollar steadfastly refused to pay or reinstate supplemental earnings benefits and medical benefits to Connor.
Thus, the matter proceeded to trial against Family Dollar on March 12, 2009. On May 7, 2009, the OWC rendered judgment, finding that Connor had sustained a compensable injury to her thoracic spine on February 21, 2006, as a result of an accident occurring in the course and scope *345 of her employment with Family Dollar, for which she was entitled to past and future SEBs, payment of certain outstanding medical expenses, and continuing SEBs until the court determined that modification is appropriate.
Family Dollar was also ordered to reimburse Connor for litigation costs in the amount of $234.02; to pay $2,000.00 in penalties and $2,000.00 in attorney fees for its failure to pay outstanding medical expenses at North Oaks Health Systems and Lallie Kemp Medical Center; and to pay $8,000.00 in penalties and $10,000.00 in attorney fees for its arbitrary and capricious termination of benefits, pursuant to LSA-R.S. 23:1201(1).
Family Dollar filed the instant appeal, assigning the following as error:
1. The OWC Judge erred in finding that the claimant was entitled to indemnity benefits from October 17, 2006, since both treating physicians concurred that the claimant had reached maximum medical improvement (MMI) from her thoracic strain which she allegedly sustained while working at Family Dollar on February 21, 2006.
2. [The] OWC Judge erred in finding that the claimant is presently disabled due to the Family Dollar accident or that her diminished earning capacity is related to that same accident.
3. The OWC Judge erred in ordering Family Dollar to pay outstanding medical expenses, and in assessing penalties and attorney's fees for failure to pay said expenses, as the claimant did not prove that said bills were submitted to Family Dollar for payment.
4. The OWC Judge erred in finding that Family Dollar had arbitrarily or capriciously terminated the claimant's benefits, and in assessing penalties and attorney's fees.

DISCUSSION

Standard of Review
In workers' compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC's findings of fact is the "manifest errorclearly wrong" standard. Dean v. Southmark Construction, 2003-1051 (La.7/6/04), 879 So.2d 112, 117. Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. Alexander v. Pellerin Marble & Granite, 93-1698 (La. 1/14/94), 630 So.2d 706, 710. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Robinson v. North American Salt Company, 2002-1869 (La.App. 1st Cir.6/27/03), 865 So.2d 98, 105, writ denied, 2003-2581 (La.11/26/03), 860 So.2d 1139. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Dean v. Southmark Construction, 879 So.2d at 117.

Assignment of Error Number One
In this assignment of error, Family Dollar contends that the OWC erred in finding that Connor was entitled to supplemental earnings benefits (indemnity benefits) from October 17, 2006, since, according to Family Dollar, both treating physicians concurred that she had reached MMI from her 2006 thoracic strain.
*346 The purpose of SEB is to compensate the injured employee for wage earning capacity she has lost as a result of an accident. Carral v. Winn-Dixie Louisiana, Inc., 2005-1482 (La.App. 1st Cir.6/9/06), 938 So.2d 799, 801. The claimant bears the initial burden of proof in SEB claims. Zirlott v. The Chitimacha Tribe of Louisiana, 2004-1010 (La.App. 1st Cir.5/6/05), 915 So.2d 860, 862. In order to recover supplemental earnings benefits, an employee must first prove by a preponderance of the evidence that she is unable to earn wages equal to 90% or more of wages she earned at the time of injury. LSA-R.S. 23:1221(3)(a); Zirlott v. The Chitimacha Tribe of Louisiana, 915 So.2d at 862. Once the employee's burden is met, the burden shifts to the employer, who, in order to defeat the employee's SEB claim or to establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee in his or the employer's community or reasonable geographic region. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, 556.
The analysis is necessarily a facts-and-circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation law is to be liberally construed in favor of coverage. Daigle v. Sherwin-Williams Company, 545 So.2d 1005, 1007 (La.1989). In determining if an injured employee has made out a prima facie case of entitlement to supplemental earnings benefits, the trial court may and should take into account all those factors, which might bear on an employee's ability to earn a wage. Daigle v. Sherwin-Williams Co., 545 So.2d at 1007 (quoting Gaspard v. St. Paul Fire & Marine Insurance Company, 483 So.2d 1037, 1039-1040 (La.App. 3rd Cir.1985)).
Contrary to Family Dollar's characterization of the medical testimony, our review of the testimony shows that all three physicians who treated and examined Connor following her February 21, 2006 accident, i.e., Drs. Dunn, Steiner and Russo, concluded that her injury and resulting sedentary limitations were causally related to the 2006 accident. Nonetheless, Family Dollar refused to reinstate or pay further benefits to Connor.
Moreover, although Family Dollar argues that its failure or refusal to do so was justified based on Dr. Dunn's testimony that Connor was at MMI in October of 2006 and could return to work, this argument ignores the remainder of Dr. Dunn's testimony in which he clearly stated that Connor could return to work, but only within the capacity to which he had previously permanently restricted her as set forth in his report of June 20, 2006, i.e., light duty/sedentary work with specific instructions that she sit at least thirty minutes of every hour. Further, when Connor reported to Andrew Gibbs, her district manager at Family Dollar, she had received permanent light-duty restrictions, she was advised by Gibbs that she would not be allowed to return to work at Family Dollar unless she had no work restrictions or limitations.
Connor further testified that since she was not allowed to return to Family Dollar, she sought and obtained employment within her light-duty restrictions as a cashier and deli helper at Ryan's Convenience Store and Deli. As shown in her Employee's Monthly Report of Earnings (LWC-WC-1020), Connor was earning substantially less than 90% of her pre-injury average weekly wage at her new light-duty employment.
*347 Thus, considering the restrictions placed on Connor as set forth above, and Family Dollar's response thereto, on review we find that Connor met her burden of proving, by a preponderance of the evidence, that she is unable to earn wages equal to 90% or more of wages she earned at the time of injury and that Family Dollar failed to rebut her showing. Here, the record is devoid of any evidence that Connor is "physically able to perform a certain job," other than light duty/sedentary, or that employment within her restrictions was available or offered to her by Family Dollar. Moreover, we note that although Family Dollar challenges Connor's credibility, the OWC judge specifically found Connor's testimony to be credible. As a reviewing court, we do not disturb reasonable evaluations of credibility by the trier of fact.
Accordingly, we find no error in the OWC's determination that Connor was entitled to supplemental earnings benefits as of October 17, 2006 and continuing thereafter. This assignment of error lacks merit.

Assignment of Error Number Two
In its second assignment of error, Family Dollar Store contends that the OWC erred in finding that Connor is presently disabled from the 2006 accident or that her diminished earning capacity is related to the 2006 accident. Given the medical and lay testimony noted above, we likewise find no merit to these arguments.[3]
As set forth above, all three physicians who treated and examined Connor following her February 21, 2006 accident agreed that her injury and resulting sedentary limitations were attributable to her 2006 accident at Family Dollar Store. In particular, Dr. Dunn testified that given Connor's pain-free status for twenty-three months prior to the 2006 injury, the initial 2003 strain/sprain had resolved. Likewise, Dr. Steiner testified that any sprain or strain that Connor had as a result of the 2003 accident had resolved, given her pain-free and asymptomatic status for two years.
Further, although the medical evidence revealed that Connor had previously undergone thoracic outlet surgery, brachial plexus surgery, and surgery for reflex sympathetic dystrophy, Dr. Steiner distinguished these and specifically explained that neither the thoracic outlet syndrome or RSD "predisposed" or caused the injury sustained in 2006.[4]
The OWC obviously accepted and relied on the above testimony in granting Bohning & Company, Inc.'s motion for summary judgment and in later rendering the judgment against Family Dollar. On review, we find the record supports the underlying findings of the OWC.
*348 With reference to Family Dollar's contentions that Connor's testimony should be rejected as "self-serving," we note that a worker's disability can be proven by medical and lay testimony, and a workers' compensation judge must weigh all of the evidence in order to determine whether the employee has met his burden of proof. Honeycutt v. Henry's Plumbing, 2007-1270 (La.App. 3rd Cir.4/2/08), 981 So.2d 60, 63-64. Moreover, a workers' compensation judge's determinations of whether the employee's testimony was credible and of whether the employee met her burden of proof are factual findings not to be disturbed on appeal absent manifest error. Alexander v. Pellerin Marble & Granite, 630 So.2d at 710; Robinson v. North American Salt Company, 865 So.2d at 105.
On review, we find no error in the OWC's determination that Connor established that her work restrictions and diminished earning capacity were causally related and directly attributable to the 2006 accident. This assignment of error also lacks merit.

Assignment of Error Number Three
In this assignment of error, Family Dollar contends that the OWC erred in ordering it to pay outstanding medical expenses, and in assessing penalties and attorney's fees for its failure to pay the expenses, as Connor did not prove that the bills were submitted to Family Dollar for payment and is not entitled to recover medical expenses because she failed to substantiate the claim. The OWC rejected these arguments and specifically ordered Family Dollar to pay outstanding medical bills to North Oaks Health System in the amount of $882.10 and to Lallie Kemp Medical Center in the amount of $349.00 for emergency medical treatment incurred by Connor after benefits were terminated. The OWC further ordered that Family Dollar pay $2,000.00 in penalties and $2,000.00 in attorney's fees for its unjustified failure to pay these outstanding medical expenses.
Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof. LSA-R.S. 23:1201(E). Medical benefits shall be paid timely and if not paid and not reasonably controverted, penalties and attorney fees shall result. A claim is reasonably controverted if the employer has sufficient factual and medical information to counter that presented by the claimant. Roussell v. St. Tammany Parish School Board, 2004-2622 (La.App. 1st Cir.8/23/06), 943 So.2d 449, 462, writ not considered, 2006-2362 (La.1/8/07), 948 So.2d 116. In the event that the payor has denied that an employee's injury is compensable, no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury. LSA-R.S. 23:1142(E).
Connor identified the bills from the emergency room visits and testified that they were incurred in connection with her 2006 injury. Specifically, she stated that she went to North Oaks Health System Emergency Room because she was suffering from such severe pain radiating from her back and down her legs that she could not bear the pain any longer. Connor testified that the bill from her emergency room visit at North Oaks in the amount of $882.10 had been turned over to Southern Recovery Credit for collection because she had no money to pay it after Family Dollar terminated her benefits. Connor further testified that on May 1, 2007, she presented at the Lallie Kemp Medical Center Emergency Room, again due to severe pain in her back and legs. She was prescribed pain medication and referred to an orthopedist. Connor was also unable to *349 personally pay the $381.00 bill for the Lallie Kemp emergency room visit and Risk Management likewise failed to pay.
At trial, counsel for Family Dollar objected to the introduction of these bills, contending that there was no proof that they had been "properly submitted" to Family Dollar for payment. Counsel for Connor countered that he actually had been provided with the unpaid bills at issue by Family Dollar's previous counsel in this matter, Ed Stauss. Connor further notes on appeal that these particular bills were obtained by Family Dollar through its previous attorney, and that a review of the medical records subpoenas issued in this case reveals that Family Dollar did, in fact, subpoena and obtain Connor's records, including the unpaid bill from North Oaks Health Systems. Further, we note that other exhibits specifically identify Risk Enterprise Management in the billing section.
Accordingly, given the record in its entirety, we find no error in the OWC's determination that Family Dollar was responsible for payment of these expenses or in its determination that penalties and attorney's fees were warranted for Family Dollar's arbitrary failure to timely pay the expenses at issue.

Assignment of Error Number Four
In its final assignment of error, Family Dollar contends that the OWC erred in finding that it had arbitrarily or capriciously terminated Connor's benefits, and in accordingly assessing penalties and attorney's fees. On review, we find no error in the OWC's award of $8,000.00 in penalties and $10,000.00 in attorney's fees for the arbitrary and capricious termination of benefits, pursuant to LSA-R.S. 23:1201(1).
The burden of proof is on the claimant to establish that an employer's conduct was arbitrary and capricious in discontinuing the payment of benefits. See LSA-R.S. 23:1201(F), (I), and (J). Whether the refusal to pay compensation benefits or the discontinuation of those benefits warrants the imposition of penalties and attorney's fees is a factual question which will not be disturbed upon review in the absence of manifest error. Weston v. Wal-Mart Stores, Inc., 2001-1816 (La.App. 1st Cir.9/27/02), 835 So.2d 587, 589.
On November 3, 2006, Family Dollar generated a "Stop Payment Form" terminating benefits for Connor effective October 16, 2006, on the basis that "claimant has been placed at MMI and released for our injury." On review, we find the record does not support this stated basis for termination and mischaracterizes the expert medical testimony relied upon by Family Dollar. As reflected in Connor's testimony and the medical records, clearly Dr. Dunn had not released her at the time the stop-payment form was issued. In fact, Dr. Dunn had recommended that she submit to an additional evaluation by a neurologist at that point and that she should also be seen by an orthopedist.
Dr. Dunn last saw Connor on November 2, 2006. At that visit, she was experiencing persistent upper back pain and pain and tingling after standing. Thus, while he deferred to an orthopedist in terms of further evaluation and treatment and felt that she had reached MMI, he also concluded she would be restricted indefinitely to light duty as a result of the 2006 accident. Drs. Steiner and Russo also placed Connor under permanent light duty/sedentary work restrictions. Thus, although Connor was eventually able to return to light-duty/sedentary employment, these accommodations were not made or offered to her by Family Dollar.
Although penalties are not to be assessed when the employee's right to *350 such benefits has been reasonably controverted by the employer or insurer, Parfait v. Gulf Island Fabrication, Inc., 97-2104 (La.App. 1st Cir.1/6/99), 733 So.2d 11, 24, an employer's termination of benefits may be considered arbitrary, capricious or without probable cause when it appears that further information was required to make a determination of the employee's condition. Killett v. Sanderson Farms, 2001-0277 (La.App. 1st Cir.5/10/02), 818 So.2d 853, 862.
Further, an insurer or an employer has a duty to investigate and make every reasonable effort to assemble factual and medical information to ascertain whether a claim is compensable before denying benefits. Parfait v. Gulf Island Fabrication, Inc., 733 So.2d at 25. Importantly, this obligation is continuing in nature. Parfait v. Gulf Island Fabrication, Inc., 733 So.2d at 25. Where, as here, an insurer or employer first receives a favorable medical report, but later receives information indicating the possibility of a continuing disability, it may not blindly rely on the earlier report to avoid attorney fees. Killett v. Sanderson Farms, 818 So.2d at 862. Statutes authorizing attorney fees in workers' compensation cases are imposed to discourage indifference and undesirable conduct by employers and insurers. Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41, 46.
Here, although Family Dollar may have reasonably controverted the claim initially, based on Dr. Steiner's report, the record shows that Family Dollar subsequently received Dr. Steiner's clarified opinion establishing a causal relationship between Connor's 2006 accident and the resulting permanent work restrictions. Nonetheless, Family Dollar refused to reinstate Connor's benefits.
Further, although informed of the opinions and recommendations of the treating physicians, Family Dollar still refused to pay benefits or to authorize their recommended treatment, despite the fact that Family Dollar was aware that Dr. Russo had recommended that Connor receive epidural injections and that she be seen by Dr. Patrick Waring for management of her pain which continued even after benefits were terminated. As the record reflects, at the time of the termination of her benefits, Connor's pain had not improved and instead had become much worse.[5]
As the OWC correctly found, Family Dollar's continued reliance on Dr. Steiner's initial report as a basis to support terminating benefits, while ignoring his deposition testimony (where he changed his opinion after being provided with the information surrounding Connor's symptomology and work history subsequent to the 2003 accident), combined with Connor's testimony and Dr. Russo's medical records, renders Family Dollar's refusal to reinstate benefits arbitrary, capricious, or without probable cause. After thorough review of the evidence herein, we find no error in the OWC's determination that Family Dollar acted arbitrarily and capriciously in terminating Connor's benefits, for which penalties and attorney's fees accordingly were due.
This assignment of error also lacks merit.

ANSWER TO APPEAL
Connor filed an answer to the instant appeal, contending that the appeal *351 filed by Family Dollar is frivolous and requesting additional penalties and attorney's fees for the work performed in having to defend this appeal. Although we have found in Connor's favor on the merits of the appeal, we cannot say that Family Dollar was insincere in its argument on appeal or that the appeal was urged for an improper motive. Further, given the OWC's prior awards, we decline to award any additional attorney's fees.

CONCLUSION
Based on the above and foregoing reasons, the May 7, 2009 judgment of the OWC is affirmed. Costs of this appeal are assessed against the appellant/employer, Family Dollar Store.
AFFIRMED.
WELCH, J., concurs in part and dissents in part with reasons assigned.
WELCH, J., concurring in part and dissenting in part.
I respectfully concur in part and dissent in part with the majority opinion in this case. I agree with the majority's conclusion that there was no error in the OWC's determination that Ms. Connor was entitled to supplemental earnings benefits as of October 17, 2006 (and continuing thereafter), that her work restrictions and diminished earning capacity were causally related and directly attributable to the 2006 accident, that Family Dollar acted arbitrarily and capriciously in terminating Ms. Connor's benefits (for which penalties and attorney fees were due), and that Family Dollar was responsible for the payment of the medical expenses incurred by Ms. Connor for her treatment at the two emergency room visits. However, I disagree that Family Dollar should have been assessed penalties and attorney fees for failing to pay the medical expenses incurred when Ms. Connor sought treatment at the two emergency rooms.
Louisiana Revised Statutes 23:1201(E) provides that medical benefits payable under workers' compensation provisions shall be paid within sixty days after the employer or insurer receives written notice of the expense. The failure to provide payment of medical expenses shall result in the assessment of a penalty and a reasonable attorney fee for each claim. La. R.S. 23:1201(F). Thus, a prerequisite for the assessment of a penalty and attorney fees for the failure to pay a medical expense is that the employer or insurer must receive written notice of the expense. There is no evidence in the record establishing that Ms. Connor, or anyone on her behalf, gave her employer (or its insurer) written notice of the medical expenses incurred by her for the two emergency room visits. Although Family Dollar eventually had possession of a copy of a bill for those medical expensesbecause it issued a subpoena for all medical records to those medical service providersFamily Dollar's possession of a copy of the bill was insufficient to establish that it received written notice of the medical expense for which it was liable. Therefore, I would reverse penalty and attorney fees awarded by the OWC with regard to Family Dollar's failure to pay the medical expenses incurred by Ms. Connor at the two emergency room visits.
NOTES
[1] We note that the June 31, 2006 date is obviously incorrect, as there are only 30 days in June. Further, Connor testified that she had never seen the termination notice and strenuously denied that she had failed to return to work. Instead, she stated that Family Dollar had terminated her because there was no light-duty work available.
[2] Notably, Family Dollar did not appeal the OWC's grant of summary judgment.
[3] As noted earlier, the record overwhelmingly demonstrates that Connor established that she sustained a work-related injury in 2003, from which she recovered and was asymptomatic for two years before the 2006 accident. Connor testified that she was treated by Dr. Dunn, that she was released to full-duty employment on January 15, 2004, and that she returned to John's Curb Mart at full-duty employment. The record also shows that Connor continued at full-duty employment and was asymptomatic until her accident and injury on February 21, 2006, at Family Dollar.
[4] Dr. Steiner explained that thoracic outlet syndrome occurs where the neurovascular bundle is squeezed by the muscles around the neck. After the nerves exit the cervical spine but before entering the arm, if there is spasm or injuries to these muscles, the nerves can be pinched and can cause pain, weakness, and numbness to the extremity. Reflex sympathetic dystrophy, or RSD, is a nerve-type condition where chronic pain can develop following an injury to the extremity.
[5] She testified that the pain had become so bad in her back that it was starting to radiate to her chest and ribs and was causing problems when she slept at night. She further explained how the deterioration in her back and attendant pain necessitated her emergency room visits.