LANDRIEU, Judge.
| ^Defendants, S <& S Property Services, LLC (“S & S”)> its insurer, The Hartford Insurance Co., and Hand Construction, LLC (“Hand Construction”), appeal the November 19, 2014 judgment of the Office of Workers’ . Compensation (“OWC”) in favor of claimant, Johan Fernandez,
On July 12, 2013, claimant filed a disputed claim for compensation in the OWC, alleging that he suffered disabling injuries in an accident on June 11, 2013, while working as a carpenter at an apartment complex in New. Orleans.[1] The Form 1008 Disputed Claim for Compensation includes the following description of the claimant’s accident and injury: “Johan Fernandez was on a lift 25-30 feet in the air cutting a piece of plywood with a saw that belonged to his supervisor, Oscar. As he cut and reached the end of the board of plywood, the other end of the board hit the wall and changed the movement and the angle arid he cut through himself.” On the form, claimant stated his disability status as “fully disabled.” , .
laThe record shows that claimant sustained severe injuries' to his left hand, which was cut .with a circular saw. These injuries included the amputation of his little finger, the loss of use of his ring finger, damage to his middle and index fingers and a loss of a portion of his previously injured thumb.
The apartment complex where claimant was injured is owned by BFNO Properties, LLC.- BFNO contracted with Hand Construction to act as general contractor of the construction project'at the-apartment complex; Hand Construction subcontracted with S & S; 8 & S subcontracted with LB Renovations, LLC; and LB Renovations subcontracted with Aracely Zela-ya-Rivas. Claimant was hired by Ms. Ze-laya-Rivas. Each of these parties, with the exception of' Ms. Zelaya-Rivas, was named as a defendant. Ms. Zelaya-Rivas was uninsured.
The issues before the OWC judge were whether defendants were direct or statutory employers for purposes of workers’ compensation, whether claimant intention-álly harmed himself to obtain benefits, the extent of his injuries and the type of benefits that might be owed to him, as well as whether he was entitled to attorney’s fees, costs and penalties. The OWC judge found that Ms. Zelaya-Rivas and LB Renovations were direct employers of claimant because he was hired by Ms. Zelaya-Ri-vas, and an employee of LB Renovations asserted direct control ever carpentry services performed by claimant at the job site.; The .OWC judge found that BFNO, Hand Construction and S & S were statutory employers of the claimant pursuant to La. R.S. 23:1061 and 23:1062. .
RThe OWC judge further fourid that Ms, Zelaya-Rivas, LB Renovations, S & S, Hand Construction and BFNO are all liable to claimant for workers’ compensation benefits, rejecting the allegation that claimant intentionally harmed himself. Judgment was rendered in favor of claimant and against 'all defendants for (1) past dues wages; (2) past medical expenses; (3) *1153 “continuing weekly compensation payments, at the maximúm statutory rate beginning as of the date of the -accident and continuing forward;” (4) continuing medical care related to claimant’s hand injuries for life; (5) attorney’s fees and costs; and (6) penalties for the failure of claimant’s direct employers, Ms. Zelaya-Rivas and LB Renovations, to secure workers’ compensation insurance. The only appellants properly before us in this appeal are S & S, its insurer, The Hartford, and Hand Construction.[2]
Appellate courts review the factual findings in a workers’ compensation case under the manifest error or clearly wrong standard. Dean v. Southmark Const., 2003-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117. The findings of the OWC judge will not be set aside unless the reviewing court finds them to be clearly wrong in light of .the record viewed in its entirety. Id. “Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in' the testimony.” Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). When Illegal error interdicts the fact-finding process in a workers’ compensation proceeding, the de novo, rather than the manifest error, standard of review applies. MacFarlane v. Schneider Nat. Bulk Carriers, Inc., 2007-1386, p. 3 (La.App. 4 Cir. 4/30/08), 984 So.2d 185, 188. When a judge in a workers’ compensation ease finds that an award of attorney’s fees is appropriate, the fixing of those fees is within the discretion of the trial court, reviewable on appeal only for the abuse of that discretion. Chatters v. Dorignac’s Food Center, 2000-0477, p. 9 (La.App. 4 Cir. 3/21/01), 787 So.2d 345, 350.
The claimant in this case had the burden of proving “personal injury by accident arising out of and in the course.of his employment.” La. R.S. 23:1031 A; Gray v. Marriott Residence Inn, 2011-1068, pp. 6-7 (La.App. 4 Cir. 2/1/12), 85 So.3d 163, 167. “Accident” is defined as- “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1). “It is well-established that áh allegedly injured employee’s testimony alone may be sufficient to discharge his burden of proof, but only if two elements are satisfied: 1) no other evidence discredits or casts serious doubt upon the employee’s version of the-incident; and 2) the employee’s testimony is corroborated by the circumstances following the allegéd incident.” Duran v. Turner Industries Group, LLC, 2011-0210, pp. 3-4 (La.App. 4 Cir. 7/20/11), 70 So.3d 1074, 1076, citing Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992).
It is undisputed that claimant sustained severe injuries to his left hand when he was cut by a circular saw while in the course and scope of his employment. The defendants presented a witness who testified thát claimant intentionally inflicted these injuries upon himself to obtain benefits. The OWC judge rejected this testimony as lacking in credibility, and found that the claimant proved he sustained a compensable, disabling injury in a work- *1154 related accident. The appellants do not raise this finding by the OWC judge as an error on appeal, although S & S alludes to it in its briefs. We will not disturb this factual finding. The assignments of error raised by appellants in this appeal concern the OWC judge’s awards to claimant for his injury.
In their first assignment of error, appellants argue that the OWC judge erred in determining that claimant’s average weekly wage was $1,300.00. La. R.S. 23:1021(13) defines wages as “average weekly wage at the time of the accident.”[3] Appellants argue that claimant had only been working on the job where he was injured for approximately 2⅜ weeks, and his only non-cash wage payment was one check for $1,000.00 based on a five-day work week. On the Disputed Claim for Compensation form, claimant stated that his weekly wage was $1,000.00.
|7In reasons for judgment, the OWC judge stated that testimony at trial established that claimant’s daily wage was $200.00 at the time of his injury, and during the period he worked at the apartment complex, he worked at least six and sometimes seven days per week. Therefore, the OWC judge found that claimant worked an average of 6.5 days per week at $200.00 per day, for a weekly wage of $1,300.00. The judge calculated claimant’s compensation benefits based on the maximum weekly compensation rate of $605.00.[4]
Claimant testified that he worked “five, six, seven days” each week during the time he worked at the apartment complex. He further stated “at times they would call us to work on Sunday’s.” He said he was paid one time by check, but by cash the rest of the time. He was unsure as to how long he worked at this job before his injury. Ms. Zelaya-Rivas, one of claimant’s direct employers, testified that claimant worked “generally five [days], perhaps six, but usually five at most.” Oscar Aguilar, who worked in the business owned by Ms. Zelaya-Rivas, stated that he hired claimant to work on the construction project, and that claimant worked almost three weeks before his injury. According to Mr. Aguilar, claimant worked “five to six days” each week, but when asked if claimant ever worked seven days in a week, Mr. Aguilar responded, “It appears that once he did.”
Based on the testimony of these three witnesses, the OWC judge found that claimant worked an average of 6.5 days per week, which amounted to a weekly |gwage of $1,300.00. We cannot say this finding was clearly wrong, as there is support for this finding in the record.
Appellants next argue that the OWC judge erred in awarding claimant temporary total disability benefits and supplemental earnings benefits, and should have instead awarded claimant benefits for permanent partial disability only. They further argue that claimant’s permanent partial disability benefits should be based only on the amputation of his little finger. Claimant argues that the injuries to his left hand have resulted in the loss of use of his entire hand, and that the OWC judge properly awarded temporary total disability benefits and supplemental earnings benefits.
*1155 The OWC judgment is problematic in that it does not specify the type of benefits awarded to claimant for his work-related injury. Although the OWC judge issued written reasons for judgment, we note the well-established rule that reasons for judgment, while defining and elucidating the principles upon which the trial court is deciding a case, form no part of the official judgment. Davis v. Hoffman, 2000-2326, pp. 6-7 (La.App. 4 Cir. 10/24/01), 800 So.2d 1028, 1032. In this matter, the OWC judge's reasons for judgment are not helpful as they are vague and, in some respects, contradictory.
The reasons for judgment include the statement that claimant is entitled to temporary total disability and supplemental earnings benefits for past due wages, yet the amount awarded in the judgment is almost the exact amount stated in the reasons that would be owed for past due wages for temporary total disability. The | ¡judgment itself states that claimant is entitled to “continuing weekly compensation payments at the maximum.statutory rate beginning as of the date of his accident and continuing -forward.” The judgment ■ does not state the type of those benefits, and the reasons for' judgment state that claimant “is entitled to Temporary Total Disability Benefits or in the alternative Supplemental Earnings Benefits of $605 per week moving forward.”
The record shows that claimant was taken immediately after the accident t'o the emergency room at Ochsner Medical Center in Gretna and ‘ was treated by Dr. Robert L. Shaekleton, an orthopedic surgeon with the Bone and Joint Clinic of Marrero. He was diagnosed with laceration to his left hand, which included the near amputation of his little finger, laceration to the volar aspect of the ring finger with laceration of the flexor digitorum su-perfieialis tendon, laceration across the vo-lar aspect of the MCP joints of the long and index fingers and laceration to the IP area of the thumb. Claimant was admitted to the hospital, and surgery was performed that same day to complete the amputation of the little finger, repair the FDS tendon of the ring finger and suture the skin about the thumb. Claimant was released the following day. He was seen by Dr. Shaekleton on June 18, 2013, and reported numbness about the ring finger and was given a prescription for continuing pain. On July 9, 2013, claimant returned to Dr. Shaekleton, and .the notes of that visit show that Dr. Shackleton’s opinion was that claimant had ruptured the flexor tendon repair to his left ring finger.
ImClaimant was seen at LSU Healthcare on August 2, 2013, and the report of Dr. Kelly Babineaux states that claimant required occupational therapy before undergoing further surgery to repair the tendon of his ring finger. Claimant underwent .the therapy, and then underwent flexor tendon repair surgery on October 11, 2013. He received postoperative therapy until November 12, 2013, when he discontinued therapy. The record shows claimant returned to work on December 1, 2013, although not to his pre-injury occupation as a carpenter.
At trial, the OWC judge had the opportunity to view claimant’s left hand, and stated in the judgment that the hand is “clearly and demonstrably disabled.” La. R.S. 23:1221 provides for the benefits to be awarded to a workers’ compensation claimant. To the extent that the judgment awarded temporary total disability benefits and/or supplemental earnings benefits, we find the OWC judge erred. Based on our de novo review of the record, we conclude claimant’s injuries have resulted in the loss of use of his entire left hand, and find that the proper award to this claimant is one of *1156 permanent partial disability benefits for 150 weeks. La. R.S. 23:1221(4)(e). •
La. R.S, 23:1221(4) states in pertinent part:
Permanent partial disability. In the following cases, compensation shall be solely for anatomical loss of use or amputation and shall be as follows:
(a) For the loss of a thumb, sixty-six and two-thirds percent of wages dur- ' ing fifty weeks. '
(b) For the loss óf a first finger, commonly called the index finger, sixty-six and' two-thirds percent of wages during thirty weeks.
1 n(c) For the loss of any other finger, or a big toe, sixty-six and two-thirds percent of wages during twenty weeks.
1 ⅜ , ⅜ ⅜ ⅜ ‡ ⅜
(e) For the loss of a hand, sixty-six v and two-thirds percent of wages during one hundred fifty weeks.
The maximum weekly compensation rate of $605.00, multiplied by 150, totals $90,750.00. Claimant testified that he has received $2,400.00 from his employer since the accident. ‘ Deducting that amount, we find that claimant' is owed permanent partial disability benefits in the amount of $88,350.00. All defendants are solidarily liable to claimant for this amount.
Appellants next argue that the OWC judge erred in holding claimant’s direct and statutory employers solidarily liable for attorney’s fees and costs. The OWC judgment decreed that claimant is entitled to an award for attorney’s fees and costs associated with this. litigation “for defendants’ collective failure to provide workers’ compensation benefits pursuant to the Workers’ Compensation Act and for the defendant’s [sic] arbitrary, capricious, and without probable cause discontinuance of payments” to claimant.
When.an employer fails to pay workers’ compensation benefits, the OWC judge may assess penalties in the form of reasonable attorney’s fees. La. R.S. 23:1201(F). That statute states in part:
(I) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers’ compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers’ compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
|]2(2) This Subsection shall not apply if . the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
Appellants argue they are not at fault for the nonpayment of workers’ compensation benefits to claimant after the accident because they reasonably controverted his claim, As stated above, the OWC judge ruled that all defendants were arbitrary, capricious and without probable cause in failing to pay workers’ compensation benefits to claimant. Under La. R.S. 23:1201, the “arbitrary) capricious or without probable cause” standard applies where there has been a discontinuance of benefits. La. R.S. 23:1201(1). In a case where the employer fails to. provide benefits, as is the case with the appellants herein, the “reasonably controverted” standard applies. La. R.S. 23:1201(F); See Brown v. Texas-LA Cartage, Inc., 98-1063, p. 8 (La.12/1/98), 721 So.2d 885, 889-890. “[I]n order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits.” Id., p. 9, 721 So.2d at 890.
*1157 On the issue of whether'S & S' reasonably controverted claimant’s claim for benefits, S & S presented the testimony of Eamon Shields, one of the owners of S'& S. Mr. Shields testified that -he first learned of claimant’s accident “somewhere around October” of 2013, several months after it occurred, from another contractor on the job. He stated that he communicated with one of claimant’s attorneys within a couple of weeks after he learned of the accident, but did not investigate further, Mr. Shields testified that he put the S & S workers’ compensation insurance carrier on notice in February 2014, after he learned that the workers’ compensation policy of its subcontractor, LB Renovations, had lapsed. His [^testimony was that he did not believe S & S owed benefits because claimant was not an S & S employee.
Hand Construction did not present testimony on the issue of whether it reasonably controverted claimant’s claim for benefits. One of the exhibits introduced at trial by Hand Construction was its “Daily Job Status Report” for June 11, 2013, the date of the accident. This report included a section in which accidents were to be listed. That section states: “Injury to an S & S worker’s hand. No interview done because employee left the jobsite.” The record also includes Hand Construction’s answers to interrogatories propounded by claimant. In those answers, Hand Construction denied that “anyone employed by [Hand Construction] in any capacity (e.g. manager, direct employee, contract labor)” informed it that claimant had sustained an injury at the jobsite. Hand Construction’s answer referred to a note of an injury “to a S & S worker’s hand” on the June 11, 2013 daily job status report. There is no indication in the record that Hand Construction further investigated the report of its statutory employee’s injury at the job-site.
-The record supports the OWC judge’s finding-that neither S & S nor Hand Construction- reasonably controverted claimant’s claim.for .benefits following his accident. Hand Construction became aware .that an'employee at its-jobsite was injured on June 11, 2013, 'the day- of claimant’s accident, and S & S. became aware of claimant’s accident no later than October 2013. Despite knowledge of this j^accident, neither company paid any workers’ compensation benefits to claimant prior to trial.
“An injured worker may recover compensation from either his statutory or direct employer, each being bound solidarily for the entire amount of compensation owed.” Gales v. Gold Bond Building Products, 493 So.2d 611, 615 (La.1986). The fact that S & S and Hand Construction were claimant’s statutory employers, and not his direct employers, did not relieve them of their obligation to pay workers’ compensation benefits to claimant. Accordingly, we find the OWC judge did not err in holding claimant’s direct and statutory employers, including appellants, solidarily liable for attorney’s fees and costs for the failure to pay; benefits to claimant. '
Appellants also argue that the OWC judge erred in awarding an excessive and unsupported award of attorney’s fees. As stated above, an appellate court reviews an award of attorney’s fees under an abuse of .discretion standard. Chatters v. Dorignac’s Food Center, 2000-0477, p. 9 (La.App. 4 Cir. 3/21/01), 787 So.2d 345, 350. La. R.S. 23:1201(F) allows an OWC judge to assess reasonable’ attorney’s fees against an employer or insurer when there has been a failure to provide payment of benefits to a claimant.
The OWC judge awarded claimant $67,792.00 in attorney’s fees and $7,837.00 *1158 in costs. Appellants contend, and the record confirms, that they were not provided with the heavily redacted billing records of claimant’s attorneys until the afternoon before they were introduced at trial. The OWC judge awarded the | ^amount of fees and costs requested by claimant’s attorneys without allowing any of the defendants the opportunity to cross-examine the amounts requested. ■
In Alexander v. Centanni, 2011-0783 (La.App. 4 Cir. 11/16/11), 80 So.3d 590, this Court remanded for a new trial on the issue of attorney’s fees and costs when the plaintiff was not allowed an opportunity to contest the amount of attorneys fees awarded to the defendant. Similarly, we find- the judge in this case abused his discretion in not allowing appellants' the opportunity to contest the amount of attorney’s fees and costs requested by claimant’s attorneys before awarding same. We vacate the OWC judge’s award of attorney’s fees and costs, and remand this matter for a new trial on these issues.
Appellants next argue that the OWC judge erred in holding them solidarity liable with claimant’s other direct and statutory employers for penalties for the failure of claimant’s direct employers to secure workers’ compensation insurance. La. 23:1032.1 states:
A. When a' direct employer, not the statutory employer or special employer, knowingly fails to secure workers’ compensation insurance or proper certification of self-insured status pursuant to R.S. 23:1168 ... then the employee or the legal dependent of a deceased employee may elect to sue the direct employer for all legal damages....
B. A .statutory employer or special employer who has secured workers’ compensation insurance or proper certification of self-insured status pursuant to R.S. 23:1168, as well as any public body or municipality, shall not be subject to the remedy provided in Subsection A of this Section and shall not be required to pay an increased weekly compensation penalty established in R.S. 23:1171.2 due to the failure of the direct employer to secure workers’ compensation insurance or self-insured certification.
l1fiS & S and Hand Construction each established that it had a workers’ compensation insurance policy in effect at the time of the accident. Pursuant to La. R.S. 23:1032.1, appellants are not liable for the failure of claimant’s direct employers to secure workers’ compensation insurance.[5] Accordingly, we reverse the judgment of the OWC judge on this issue.
In their final assignment of error, appellants argue that the OWC judge erred in awarding medical expenses to claimant without providing an offset for amounts paid by collateral sources. La. R.S. 23:1212 states:
A. Except as provided in Subsection B, payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, or by Medicaid or other state medical assistance programs of medical expenses that are owed under this Chapter, shall extinguish the claim against the employer or insurer for those medical expenses. This Section shall not be regarded as a violation of R.S. 23:1163. If the employee or the employee’s spouse actually pays premiums for health insurance, either as direct payments or as itemized *1159 deductions from their salaries, then this offset will only apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums.
B. Payments by Medicaid or other state medical assistance programs shall not extinguish these claims and any payments made by such entities shall be subject to recovery by the state against the employer or insurer.
“The medical expense offset provision is not self-operating; the employer must plead its offset and prove it with evidence showing that a payment of a certain amount of workers’ compensation claimant’s medical expenses was made by a person other than claimant, a relative or friend of the claimant.” Feingerts v. American Cas. Co. of Reading, 2009-1209, pp. 14-15 (La.App. 4 Cir. 3/10/10), 34 So.3d 358, 367, citing Lemons v. Georgia Pacific Corp., 42,950, p. 10 (La.App. 2 Cir. 2/13/08), 976 So.2d 307, 314. In order to avail themselves of the provisions of La. R.S. 23:1212, appellants were required to plead the offset as’an affirmative defense and prove the amount.of the offset at trial. See Feingerts, 2009-1209, p. 15, 34 So.3d at 367-368.
Hand Construction did not plead the right to an offset as an affirmative defense, but S & S, while not specifically pleading the offset, pled “any other affirmative defenses available to Defendants pursuant to Louisiana law or the Louisiana Workers’ Compensation Act.”[6] We conclude the right to an offset under La. R.S. 23:1212 was pled through the answer of S & S. The medical bills in evidence include references to large amounts of discounts and adjustments, but are unclear as to what amounts were paid by claimant or are still due. Claimant did not have health insurance, and there is a reference to a discount for “self-pay” in the medical bills. While it appears the vast majority of the medical bills were not paid by claimant or by a relative or friend on his behalf, there is insufficient evidence in the record to determine an accurate amount of the offset under La. R.S. 23:1212. Accordingly, we reverse the award of past medical expenses of $40,444.15, and remand this matter for a. new trial on the issue of the amount to be credited against claimant’s award for past medical, expenses due to payments by other sources.
|1sFor the reasons stated above, we reverse the portions of the OWC judgment holding appellants liable for penalties for the failure of claimant’s direct employers to secure workers’ compensation' insurance. We reverse the portions of the OWC judgment awarding claimant .temporary total disability benefits and/or supplemental earnings benefits, .and render judgment in favor of claimant and against all defendants for permanent partial disability benefits totaling $88,350.00. We reverse the award of attorney’s fees, costs and past medical expenses, and remand for á new trial on these issues. In all other respects, the OWC judgment is affirmed.
REVERSED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART; AFFIRMED IN PART.

. The disputed claim form states that the apartment complex where claimant was working was the Forest Park apartment complex, but the record shows the property is the Jackson Landing Apartments on Garden Oaks ■Drive,

. Defendants, BFNO-Properties, LLC, and LB Renovations, LLC, also appealed. However, their appeals were dismissed on October 7, 2015 for failure to respond to this Court’s briefing notice of August 24, 2015. See Rule 2-8.6 of the Uniform Rules, Courts of Appeal.

. The briefs of the appellants present essentially the same eight assignments of error. Hand Construction adopts the arguments set forth by S & S in its brief, and includes additional arguments.

. On the date of claimant’s accident, the maximum weekly compensation rate was $605.00, according to the Louisiana Workforce Commission, Office of Workers' Compensation Administration.

. The OWC judge cited the case of Isaac v. Lathan, 2001-2639 (La.App. 1 Cir. 11/8/02), 836 So.2d 191, in support of his assessment of penalties against all defendants for the failure of claimant’s direct employers to secure workers’ compensation insurance. La. R.S. 23:1032.1 was enacted in 2005, after the Isaac case was rendered.

. Hand Construction and S & S both argued entitlement to offset pursuant to La. R.S. 23:1212 in post-trial briefs.