STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 1212

JEANNE TERREBONNE

VERSUS

ST. TAMMANY PARISH HOSPITAL

Judgment Rendered: **JUL 2 0 2022**

* * * * * * *

On Appeal from the Office of Workers' Compensation, District 6
In and for the Parish of St. Tammany
State of Louisiana
Number 19-02594

R. Myles Donahue, Presiding

* * * * * * *

Suzette Tagesen Murphy                    Counsel for Plaintiff/Appellee,
Metairie, Louisiana                       Jeanne Terrebonne


John J. Rabalais                          Counsel for Defendant/Appellant,
Matthew D. Crumhorn                       St. Tammany Parish Hospital
Megan C. Gladner
Covington, Louisiana

* * * * *

BEFORE: THERIOT, PENZATO, AND HESTER, JJ.

**PENZATO, J.**

In this workers' compensation case, the defendant/employer appeals the portion of a judgment rendered on June 28, 2021, in favor of the claimant/employee and against the defendant. Specifically, the defendant seeks reversal of the portion of the judgment that awarded a penalty to the claimant in the amount of $8,000.00 and attorney fees in the amount of $12,000.00 pursuant to La. R.S. 23:1201(I). For the following reasons, we affirm.

The claimant timely filed an answer to the appeal pursuant to La. C.C.P. art. 2133, seeking an award of costs and attorney fees incurred opposing the appeal. Because we affirm all portions of the judgment in the claimant's favor and against the defendant, we grant the relief requested in the claimant's answer and award $1,500.00 in attorney fees to the claimant on appeal.

## FACTS AND PROCEDURAL HISTORY

The claimant, Jeanne Terrebonne, filed a 1008 Disputed Claim for Compensation on April 22, 2019, alleging that her employer, St. Tammany Parish Hospital, denied medical benefits for her work-related injury. She sought penalties, attorney fees, costs, and interest. The Hospital filed an answer on May 6, 2019, admitting that Ms. Terrebonne sustained an injury on January 5, 2016 while in the course and scope of her employment. However, the Hospital denied that Ms. Terrebonne met the initial burden of "proving entitlement to current medical treatment" and denied that she was entitled to medical benefits based on her failure to seek medical treatment since March 29, 2017.

The matter proceeded to trial on May 10, 2021, to determine whether Ms. Terrebonne was entitled to penalties and attorney fees because the Hospital either failed to timely approve her claim for medical benefits or it arbitrarily, capriciously, and without probable cause denied or discontinued payment of her claim through its adjuster, Alan Daigrepont. La. R.S. 23:1201(E), (F), and (I). The

2

workers' compensation court also considered the Hospital's motion to dismiss Ms. Terrebonne's claim premised on the argument that she failed to file a LWC Form 1010 request for treatment in violation of the procedural requirements set forth in the Louisiana Administrate Code. LAC 40:I.2715(D)(2)(a).

**Facts Established at Trial**

Ms. Terrebonne injured her right wrist and forearm in January 2016 while performing her duties as a nurse for the Hospital. The Hospital initially provided workers' compensation medical benefits to Ms. Terrebonne and approved her selection of treating orthopedic surgeon, Dr. Brandon Donnelly. Ms. Terrebonne treated with Dr. Donnelly until her follow-up appointment on March 29, 2017.

Between March 2017 and January 2019, Ms. Terrebonne did not receive medical treatment, because her symptoms were not "severe enough" to cause her to seek treatment. However, her symptoms increased in January 2019, prompting her to contact Dr. Donnelly's office to schedule an appointment. The doctor's office advised Ms. Terrebonne that workers' compensation authorization was needed to schedule an appointment. Ms. Terrebonne contacted her attorney, Suzette Murphy, who contacted Mr. Daigrepont, the adjuster assigned to handle Ms. Terrebonne's workers' compensation claim by the Hospital's third-party administrator.

Ms. Murphy faxed a letter to Mr. Daigrepont on January 31, 2019, explaining that her client, Ms. Terrebonne, sought to return to Dr. Donnelly for medical treatment and that Dr. Donnelly's office must be given authorization to make an appointment. The letter stated, "Please accept this as our demand to authorize a return appointment."

Mr. Daigrepont responded to Ms. Murphy's letter via email on February 1, 2019. He acknowledged receiving Ms. Murphy's letter and provided a brief summary of Ms. Terrebonne's January 2016 injury and treatment history, including her last appointment with Dr. Donnelly in early 2017. Mr. Daigrepont then stated,

"I would like to suspend the authorization you request, if you will provide answers to a few questions for me." He inquired as to whether Ms. Terrebonne had any medical treatment in the last two years for this work injury, why she was demanding treatment now if she has not received treatment in the last two years, and whether Ms. Terrebonne was involved in any "accidents (WC / GL / Auto)" within the last two years. Mr. Daigrepont concluded, "These and many more questions bring rise to the validity of complaints....Please be so kind as to answer these questions and I will consider your request for an office visit with Dr Donnelly." At trial, Mr. Daigrepont testified that, when he received Ms. Murphy's letter, he "questioned the validity" of Ms. Terrebonne's request and need for treatment due to the time that had passed since her last visit with Dr. Donnelly.

Ms. Murphy responded to Mr. Daigrepont via email on March 26, 2019. She explained, "I am seeing this response today as you were in my spam folder." Replying to Mr. Daigrepont's questions, Ms. Murphy stated that Ms. Terrebonne had not received any other treatment and "has not been involved in any new accidents or injuries." Ms. Murphy did not respond to Mr. Daigrepont's question concerning why Ms. Terrebonne was seeking treatment now, but she stated that Ms. Terrebonne spoke informally to a physician she works with regarding her symptoms. Ms. Murphy again requested, "Please authorize the return office visit."

At trial, Mr. Daigrepont admitted that he did not respond to Ms. Murphy's March 26, 2019 email "[o]ut of frustration because [she] had not answered any of the questions I had posed prior." In Mr. Daigrepont's opinion, Ms. Murphy did not respond to his questions, because "there was no supporting documentation that was asked [of her]." Although Mr. Daigrepont did not specifically ask Ms. Murphy to provide documentation to support her responses to his questions, he testified that he believed his questions were "self-explanatory that they required some sort of documentation." Finally, Mr. Daigrepont dismissed Ms. Murphy's explanation that

4

his February 1, 2019 email went to her email's spam folder as an "excuse" for her delay.

Ms. Murphy emailed Mr. Daigrepont again on April 12, 2019 to follow up, asking, "Was a return office visit authorized?" Mr. Daigrepont responded to Ms. Murphy the same day, stating in part, "Quite frankly, I've been ignoring this request on the grounds that it is completely unreasonable." Notably, though, Mr. Daigrepont pointed out that when Ms. Terrebonne last saw Dr. Donnelly on March 29, 2017, Dr. Donnelly advised Ms. Terrebonne to return as needed (PRN).

Mr. Daigrepont testified that he responded this way and again did not ask Ms. Murphy to provide documentation "[o]ut of frustration." He explained that he was frustrated with Ms. Murphy because she failed to respond to many emails he sent to her in the past, including his 2018 email asking whether Ms. Murphy needed anything further regarding Ms. Terrebonne since she was no longer receiving medical care.[1] While being questioned by Ms. Murphy at trial, Mr. Daigrepont admitted, "I was frustrated with you because you were acting completely unprofessional and ignoring me." He also stated that part of his frustration with Ms. Murphy related to her actions on other claims they previously worked together, which had nothing to do with Ms. Terrebonne's claim. Mr. Daigrepont expressly admitted that he ignored Ms. Terrebonne's request for authorization "[b]asically out of retaliation for the number of times that [Ms. Murphy] ignored me."

The evidence established that, other than these email exchanges, Mr. Daigrepont did nothing to respond to Ms. Terrebonne's request for appointment authorization. According to Mr. Daigrepont, there was nothing to do with the request because he did not receive a LWC Form 1010. In Mr. Daigrepont's

---

[1] Mr. Daigrepont closed his file on Ms. Terrebonne's claim in 2018 due to inactivity sixty days after his email to Ms. Murphy was unanswered.

opinion, a Form 1010 was required for him to "give consideration" to Ms. Murphy's email request for authorization. However, Mr. Daigrepont felt he had no "obligation to educate" counsel or the doctor's office, so he did not advise Ms. Murphy or Dr. Donnelly that he believed a Form 1010 was required. Instead, he did nothing until May 29, 2019, when he approved Ms. Terrebonne's request for an appointment with Dr. Donnelly after being instructed to by counsel for the Hospital.

**Ruling of the Workers' Compensation Court**

After taking the matter under advisement, the workers' compensation court rendered judgment in favor of Ms. Terrebonne and against the Hospital, finding that Mr. Daigrepont arbitrarily, capriciously, and without probable cause denied Ms. Terrebonne's claim. The judgment, signed on June 28, 2021, denied the Hospital's motion to dismiss Ms. Terrebonne's claim and awarded a penalty against the Hospital in the amount of $8,000.00 and attorney fees in the amount of $12,000.00 pursuant to La. R.S. 23:1201(I).

In its written reasons, the workers' compensation court first addressed the Hospital's motion to dismiss, rejecting its contention that Ms. Terrebonne was required to submit a Form 1010. The court reasoned that, pursuant to the Louisiana Administrative Code and under the facts presented, a Form 1010 is only required on every fourth routine evaluation and management office visit. LAC 40:I.2715(D)(2)(a). The evidence established that Dr. Donnelly submitted a Form 1010 for Ms. Terrebonne's treatment on March 21, 2017. Mr. Daigrepont approved the requested follow-up visit scheduled for March 29, 2017, plus five additional visits. However, Ms. Terrebonne returned for only one follow-up appointment. Thus, it appears the court determined that a Form 1010 was not required in January 2019 for what would be Ms. Terrebonne's second routine evaluation pursuant to the Form 1010 submitted by Dr. Donnelly and approved by Mr. Daigrepont on

March 21, 2017.

As to the remaining issues, the court concluded that the evidence proved that Mr. Daigrepont willfully ignored and then specifically denied Ms. Terrebonne's treatment "out of his frustration" with Ms. Murphy and "in retaliation" against her for what he considered to be her unprofessional conduct. After receiving Ms. Murphy's email response on March 26, 2019, and until May 29, 2019, Mr. Daigrepont "did nothing to further investigate the claim" and admitted that the only reason he authorized Ms. Terrebonne's medical treatment on May 29, 2019 was because the Hospital's counsel advised him to after the Disputed Claim for Compensation was filed. The court found Mr. Daigrepont's behavior and motives to be "egregious enough to warrant a deterring award" of the maximum penalty of $8,000.00 allowed by La. R.S. 23:1201(I). The court further found, after reviewing the record and the issues raised in connection with the dispute, that an award of attorney fees in the amount of $12,000.00 was reasonable.

**Issues on Appeal**

The Hospital filed the instant appeal, asserting that the workers' compensation court manifestly erred in finding that it discontinued Ms. Terrebonne's claim for medical benefits and by awarding the maximum allowed penalty of $8,000.00 pursuant to La. R.S. 23:1201(I) and attorney fees in the amount of $12,000.00.

Ms. Terrebonne timely filed an answer to the appeal pursuant to La. C.C.P. art. 2133, seeking an award of costs and attorney fees incurred opposing the appeal.

**DISCUSSION**

**Standard of Review**

Under the manifest error standard of review, this court may only reverse a factual determination made by the workers' compensation court if we find from the

record that a reasonable factual basis for the finding does not exist and the finding is manifestly erroneous. In reviewing the factual findings of the lower court, we do not retry the case, do not make credibility decisions or conclusions, and do not draw inferences from the factual and credibility determinations. That is the role of the trial court. *Bell v. SGS Petroleum Service Corp.*, 2019-1614 (La. App. 1st Cir. 12/10/20), 316 So.3d 515, 520-21.

Here, the manifest error standard applies to the factual determinations made by the workers' compensation court, particularly, whether the Hospital delayed payment or discontinued treatment for purposes of applying La. R.S. 23:1201(F) or (I), and whether the Hospital, through Mr. Daigrepont, was arbitrary and capricious and should be cast with penalties and attorney fees. *Bell*, 316 So.3d at 520-22; *Our Lady of the Lake Hospital, Inc. v. Jackson*, 2013-1314 (La. App. 1st Cir. 6/6/14), 147 So.3d 221, 230; *Connor v. Family Dollar Store*, 2009-1537 (La. App. 1st Cir. 3/26/10), 36 So.3d 339, 349, *writ denied*, 2010-959 (La. 6/25/10), 38 So.3d 344 (Whether the refusal to pay compensation benefits or the discontinuation of benefits warrants the imposition of penalties and attorney fees is a factual question, which will not be disturbed upon review in the absence of manifest error.) However, the amounts awarded in penalties and attorney fees are entitled to great discretion and will not be disturbed absent an abuse of discretion. *Millender v. BASF Corp.*, 2013-2253 (La. App. 1st Cir. 12/23/14), 168 So.3d 649, 658.

**Requirement of a Form 1010**

Although the Hospital does not appeal the portion of the judgment that denied its motion to dismiss, it argues that the court erred in rendering judgment in Ms. Terrebonne's favor because she failed to submit a Form 1010 for appointment approval as required by the medical treatment guidelines set forth in the Louisiana Administrative Code. According to the Hospital, without this form, any delay in approving the request does not warrant an award of penalties and attorney fees.

Louisiana Administrative Code 40:I.2715(D)(2)(a) pertinently states:

> A LWC-WC-1010 shall be required for a routine evaluation and management office visit after the twelfth visit or after one year from date of accident. If approved, an LWC-WC-1010 shall only be required on every fourth routine evaluation and management office visit thereafter. The carrier/self-insured employer may authorize more office visits over a defined period of time.

As noted above, the evidence established that Ms. Terrebonne's injury occurred in January 2016, and Mr. Daigrepont approved Dr. Donnelly's Form 1010 on March 21, 2017, authorizing a total of six office visits. This satisfied the requirement that a Form 1010 be submitted for a routine evaluation and management office visit after one year from the date of accident. *See* LAC 40:I.2715(D)(2)(a). In accordance with this section of the Administrative Code, the March 21, 2017 Form 1010 authorized five routine office visits after Ms. Terrebonne's March 29, 2017 appointment.[2] We agree with the workers' compensation court's finding that no additional Form 1010 was required in January 2019, since the requested appointment was to be Ms. Terrebonne's second routine evaluation and management visit with Dr. Donnelly pursuant to the March 21, 2017 Form 1010.[3]

Even though the requested 2019 visit was authorized pursuant to the Form 1010 procedure set forth in LAC 40:I.2715, this does not end the inquiry. As set forth below, we find, based on the particular facts and circumstances of this case, that Mr. Daigrepont's flagrant disregard for Ms. Terrebonne's rights under the Workers' Compensation Act amounted to a tacit revocation of the prior authorization given on March 21, 2017, and a denial of Ms. Terrebonne's request

---

[2] We note that the Hospital failed to define a period of time within which the approved appointments must occur.

[3] We also note that the Hospital did not request a Form 1010 in the spring of 2019 and subsequently approved the appointment with Dr. Donnelly even though a Form 1010 had not been submitted. This further contradicts the Hospital's assertion that a Form 1010 was required to obtain appointment authorization. In fact, the Hospital did not raise the Form 1010 issue until trial.

for appointment approval in January 2019.

**Denial of Benefits and Applicability of La. R.S. 23:1201(I)**

The Hospital next argues that the court erred by finding that it denied Ms. Terrebonne's claim and by awarding penalties and attorney fees pursuant to La. R.S. 23:1201(I). It argues that, at most, there was a delay in approving Ms. Terrebonne's request for authorization of her appointment with Dr. Donnelly, which may trigger penalties pursuant to La. R.S. 23:1201(F). We disagree.

Two statutes in Louisiana's Workers' Compensation Act are at issue and provide for penalties and/or attorney fees when an employer fails to properly handle payments of an employee's claim. Louisiana Revised Statutes 23:1201(F) provides for penalties and reasonable attorney fees for failure to timely pay compensation or medical benefits in accordance with La. R.S. 23:1201.[4] The provision does not apply if the claim is reasonably controverted or if the nonpayment results from conditions over which the employer or insurer had no control. La. R.S. 23:1201(F)(2); *Sharp v. St. Tammany Marine & Powersports*, 2008-1992 (La. App. 1st Cir. 9/10/09), 23 So.3d 347, 351.

The second provision, La. R.S. 23:1201(I), authorizes the assessment of penalties and reasonable attorney fees if the employer, at any time, discontinues payment of a claim, when such discontinuance is found to be arbitrary, capricious, or without probable cause. *Sharp*, 23 So.3d at 351. Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation. The crucial inquiry is whether the employer has an articulable and objective reason for discontinuing benefits at the time it took that action. *Life Flight of New Orleans v. Homrighausen*, 2005-2538 (La. App. 1st Cir. 12/28/06),

---

[4] The time delays within which medical benefits must be paid are set forth in La. R.S. 23:1201(E)(1) and (2).

952 So.2d 45, 52, *writ denied,* 2007-558 (La. 5/4/07), 956 So.2d 615. Awards of penalties and attorney fees in workers' compensation cases are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Although the Workers' Compensation Act is to be liberally construed regarding benefits, penal statutes are to be strictly construed. *Iberia Medical Center v. Ward,* 2009-2705 (La. 11/30/10), 53 So.3d 421, 433-34.

In support of its assertion that approval was delayed "if anything," the Hospital maintains that, when Ms. Terrebonne requested treatment in January 2019, it conducted an investigation and approved the requested return visit to Dr. Donnelly when additional information was received. However, the Hospital offered no evidence to establish what, if any, investigation was done prior to May 29, 2019, nor did it identify what "additional information" it received, which prompted it to approve the January 2019 request or excused its failure to act until May 29, 2019. Mr. Daigrepont testified that the appointment approval was based on the same information he possessed in January 2019. He admitted that, when the request was approved, he had no additional information concerning Ms. Terrebonne's medical status. Additionally, there is no indication that counsel for the Hospital performed an investigation before instructing Mr. Daigrepont to approve the appointment.

The evidence in the record establishes that, had Mr. Daigrepont investigated the request, rather than intentionally ignore it, he would have discovered the explanation for Ms. Terrebonne's return visit. As the workers' compensation court noted in its written reasons, Ms. Terrebonne's medical records admitted into evidence show that, on March 29, 2017, Dr. Donnelly documented that Ms. Terrebonne continued to have mild pain and her symptoms occasionally flared up. Dr. Donnelly instructed Ms. Terrebonne to be more aware of the activities that cause her flare ups and recommended additional diagnostic tests and treatment if

she had a flare up or became more symptomatic. Thus, contrary to Mr. Daigrepont's baseless determination, it was not "completely unreasonable" for Ms. Terrebonne to return to Dr. Donnelly in 2019 upon experiencing an increase of symptoms.[5]

Portions of Mr. Daigrepont's claim file admitted into evidence also reflect that, in January 2019, Mr. Daigrepont had all necessary information to advise Ms. Murphy and Dr. Donnelly that the requested appointment was approved by the March 2017 Form 1010. Instead of mentioning the prior approval or advising that a new Form 1010 was needed, Mr. Daigrepont continued to purposefully "ignore this request." All actions taken by Mr. Daigrepont, including what he expressly told Ms. Murphy, lead to the reasonable conclusion that the Hospital no longer approved Ms. Terrebonne's treatment with Dr. Donnelly and discontinued her medical benefits. In fact, Mr. Daigrepont responded affirmatively when he was asked at trial if the only thing that was *denied* was this office visit. Finally, this conclusion is further supported by the Hospital's answer to Ms. Terrebonne's Disputed Claim for Compensation, in which it denied that she is entitled to benefits.

In *Stewart v. Livingston Parish School Board*, 2007-1881 (La. App. 1st Cir. 5/2/08), 991 So.2d 469, 475, this court found that the employer, through its workers' compensation claims administrator, effectively denied a claim for medical expenses when it failed to respond to the claimant's letter requesting that it review his claim. The court in *Stewart* concluded that the lack of a response was the equivalent of a denial of compensability. *Id.*

The same is true here. The Hospital, through Mr. Daigrepont, effectively discontinued Ms. Terrebonne's medical treatment by intentionally ignoring her

---

[5] Mr. Daigrepont testified that, when he receives a request for an appointment, he relies on his experience as a claims adjuster to determine whether an office visit is medically necessary.

request for additional treatment.[6] Thus, after a thorough review of the record, we find the workers' compensation court properly applied La. R.S. 23:1201(I) rather than La. R.S. 23:1201(F).

We also agree with the workers' compensation court's conclusion that Mr. Daigrepont's conduct was arbitrary, capricious, and without probable cause. Mr. Daigrepont unequivocally admitted that he ignored Ms. Terrebonne's claim out of frustration with her counsel and in retaliation for what he felt was counsel's allegedly "unprofessional" prior behavior. His testimony demonstrates that, after posing questions to Ms. Murphy and receiving what he deemed to be inadequate responses, he did nothing to fulfill his continuing obligation to further investigate Ms. Terrebonne's claim. *See Connor*, 36 So.3d at 350, recognizing that an employer has a continuing duty to investigate and make every reasonable effort to assemble factual and medical information to ascertain whether a claim is compensable before denying benefits. By his own admission, Mr. Daigrepont acted willfully and, in our view, unreasonably and without an "articulable and objective reason for discontinuing benefits." *Life Flight of New Orleans*, 952 So.2d at 52.

Finally, considering Mr. Daigrepont's blatant disregard for Ms. Terrebonne's rights under the Workers' Compensation Act, we find no abuse of discretion in the court's award of $8,000.00, the maximum amount allowed by La. R.S. 23:1201(I). Mr. Daigrepont's conduct is precisely the type of indifference and undesirable conduct by employers (and their agents) the penal statutes aim to discourage. *See Iberia Medical Center*, 53 So.3d at 433-34; *Connor*, 36 So.3d at 350.

---

[6] To the extent the Hospital argues that Ms. Terrebonne abandoned treatment in an attempt to excuse Mr. Daigrepont's behavior, which the Hospital entirely fails to address, we find this argument lacks merit. *See Sevin v. Chevrolet*, 2008-1362 (La. App. 1st Cir. 4/30/09), 24 So.3d 879, 889, recognizing that "the mere failure to return for follow-up appointments is not sufficient justification to terminate or refuse to pay compensation benefits."

**Award of Attorney Fees**

Finally, the Hospital contends that the workers' compensation court erred by awarding $12,000.00 in attorney fees without requiring Ms. Terrebonne to provide any evidence of the work performed in this case. The Hospital further maintains that "it should be provided the right to contest any amount of attorney fees and/or costs that may be awarded."[7]

Contrary to these assertions, Louisiana courts have recognized that, when attorney fees are awarded in a workers' compensation case, they are deemed to be a penalty and the value of the attorney's fees need not be proven. *Orgeron v. Tri-State Road Boring, Inc.*, 434 So.2d 65, 69 (La.1983). The workers' compensation court is allowed to call upon its own experience and expertise in determining the amount of time and effort that a lawyer has put into the preparation of a case. The factors to be considered in the imposition of an award for attorney fees in a workers' compensation case include the degree of skill and work involved in the case, the amount of the claim, the amount recovered, and the amount of time devoted to the case. *Insurance Co. of North America v. Labit*, 1999-2448 (La. App. 1st Cir. 11/15/00), 772 So.2d 385, 389; *Shelton v. Smitty's Supply, Inc.*, 2017-1419 (La. App. 1st Cir. 6/12/18), 253 So.3d 157, 172, *writs denied*, 2018-1195,

---

[7] The Hospital cites *Fernandez v. Hand Construction, LLC*, 2015-615 (La. App. 4th Cir. 5/16/16), 194 So.3d 1149, to support its assertion that the workers' compensation court erred by failing to provide it with an opportunity to contest the amount of attorney fees awarded to Ms. Terrebonne. We find *Fernandez* is distinguishable. In *Fernandez*, the workers' compensation court awarded the claimant $67,792.00 in attorney fees – the amount requested by the claimant pursuant to "heavily redacted billing records." The employer was not provided with these records until the afternoon before they were introduced at trial and was denied an opportunity to cross-examine the amounts requested. *Id.* at 1158-59. Here, the workers' compensation court granted the Hospital's motion to strike the post-trial billing records submitted by Ms. Terrebonne in support of her request for attorney fees. Thus, the amount of attorney fees awarded was not based on evidence that the Hospital was not allowed to examine or contest. Instead, as it was allowed to do, the workers' compensation court relied on its own experience and expertise in determining the amount of time and effort that Ms. Terrebonne's counsel put into the preparation of the case. *Insurance Co. of North America v. Labit*, 1999-2448 (La. App. 1st Cir. 11/15/00), 772 So.2d 385, 389.

2018-1199 (La. 11/14/18), 256 So.3d 258, 256 So.3d 291.[8]

Here, the written reasons state that the workers' compensation court "reviewed the record of all pleadings and issues raised in connection with the 1008 dispute filed by the plaintiff" and found that an award of $12,000.00 is reasonable. After review of the record, we do not find the workers' compensation court abused its discretion in determining the amount of the award.

Specifically, the record demonstrates that Ms. Murphy obtained follow-up medical treatment for Ms. Terrebonne and, eventually, a favorable judgment. Counsel participated in discovery and pre-trial motion practice. Ms. Murphy's trial work included attending status conferences with the workers' compensation court, preparing pre-trial statements, witness lists, and numerous trial exhibits, as well as drafting a post-trial brief. *See Brown v. Shop Rite, Inc.*, 2011-727 (La. App. 3rd Cir. 11/2/11), 75 So.3d 1002, 1012, *writ denied,* 2011-2647 (La. 2/10/12), 80 So.3d 480, wherein the court of appeal found that an attorney fee award in the amount of $6,500.00 was abusively low and increased the award to $14,000.00. The court in *Brown* recognized that, even though the matter was tried in one morning, the claimant's counsel prepared numerous exhibits, participated in depositions and discovery, and obtained medical treatment and benefits for his client, as well as significant penalties pursuant to La. R.S. 23:1201(F) and (I). Counsel in *Brown* also filed post-trial papers and filed and argued a motion for a new trial prior to appeal.

Additionally, we find no merit in the Hospital's argument that any work performed after the requested appointment was approved was not for Ms.

<hr>

[8] The Hospital cites the factors enumerated in *Brown v. C & S Wholesale Services, Inc.*, 2016-0072 (La. App. 1st Cir. 10/4/16), 205 So.3d 958, 961, used to determine the appropriate award of attorney fees pursuant to La. R.S. 23:1141. Specifically, La. R.S. 23:1141(B) provides that the fees of an attorney who renders service for an employee in a workers' compensation controversy are limited to twenty percent of the amount recovered. Because La. R.S. 23:1201(I) expressly precludes the application of the limitations found in La. R.S. 23:1141, we find the more appropriate considerations are those specifically addressing attorney fees pursuant to a penalty provision, like La. R.S. 23:1201(I).

Terrebonne's benefit and should not be considered in any potential attorney fee award. The Louisiana Supreme Court has recognized that statutory attorney fees, awarded to an employee in cases of arbitrary behavior by the employer or the insurer, are intended to benefit the employee, who would otherwise have to pay the contractual attorney fees out of her benefits recovered in the litigation. *McCarroll v. Airport Shuttle, Inc.*, 2000-1123 (La. 11/28/00), 773 So.2d 694, 700.[9]

## ANSWER TO APPEAL

Because we affirm all portions of the appealed judgment in Ms. Terrebonne's favor, we also grant the relief sought in her answer to the Hospital's appeal. We find an award of $1,500.00 in attorney fees on appeal to be appropriate. *See Life Flight of New Orleans*, 952 So.2d at 53, recognizing that a workers' compensation claimant is entitled to an increase in attorney fees to reflect additional time incurred in defending the employer's unsuccessful appeal and awarding $1,500.00 in additional attorney fees for work done on appeal. Similarly, in *Bridges v. Gaten's Adventures Unlimited, L.L.C.*, 2014-1132 (La. App. 1st Cir. 4/2/15), 167 So.3d 992, 1006-07, this court found that an award of $1,500.00 in attorney fees was appropriate where the claimant prevailed on some of the issues on appeal. Particularly, the evidence in *Bridges* sufficiently established that the claimant sustained an accident and injuries covered by the Workers' Compensation Act and was entitled to an award of penalties and attorney fees for her employer's failure to timely pay medical benefits in violation of La. R.S. 23:1201(F).

## CONCLUSION

For the foregoing reasons, we affirm the judgment, signed on June 28, 2021, rendered in favor of Jeanne Terrebonne and against St. Tammany Parish Hospital,

---

[9] Although *McCarroll* concerned attorney fees pursuant to La. R.S. 23:1201(F), we find the Court's reasoning and findings apply equally to attorney fees awarded pursuant to subpart (I). Specifically, the *McCarroll* Court found that the Legislature intended both the penalties and attorney fees authorized by subpart (F) to serve as a means of deterring arbitrary conduct by the employer or the employer's insurer. 773 So.3d at 698.

awarding a penalty to Ms. Terrebonne in the amount of $8,000.00 and attorney fees in the amount of $12,000.00 pursuant to La. R.S. 23:1201(I). We further grant the relief sought in the answer to the appeal filed by Jeanne Terrebonne and award $1,500.00 in attorney fees in favor of Ms. Terrebonne against St. Tammany Parish Hospital for work performed by Ms. Terrebonne's counsel on appeal. All costs of this appeal are assessed against St. Tammany Parish Hospital.

**AFFIRMED; ANSWER TO APPEAL GRANTED; ADDITIONAL ATTORNEY FEES OF $1,500.00 AWARDED.**